# Brown *versus* Schock.

77 471
186 201

1. Brown as endorser sued defendant on a note given to Simpson for a patent machine which was a fraud. The defence was that Brown was a participant in the fraud, having travelled with Simpson and aided him when he procured the notes of defendant and several others of the same kind. The question was as to Brown being the same person who had travelled, &c., with Simpson. *Held,* this was a question for the jury, to be proved by circumstances, as any other question of identity.

2. Rules of evidence are the same in criminal and civil cases, if they pertain to questions the same in their nature.

3. Circumstantial evidence in this case was for the jury on the question of identity.

March 2d 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON and PAXSON, JJ.

Error to the Court of Common Pleas of *Schuylkill county :* No. 198, to January Term 1874.

This was an action of assumpsit, brought to June Term 1869, of the court below, by Wesley Brown against Adam Schock. The plaintiff sued as endorsee of the following note:

"$125.00.                         Schuylkill Tp., Sept. 4th 1867.

Six months after date, I promise to pay E. D. Simpson, or order, $125, for value received, with interest, waiving the right of all valuation, appraisement, stay and exemption laws.

Given for Geo. W. Benton's Patent Washing-Machine, township Schuylkill.                         ADAM SCHOCK."

Endorsed: "E. D. SIMPSON."

The defence was that the payee had fraudulently obtained the

note from the drawer with the knowledge and by the aid of the plaintiff.

The case was tried May 7th 1873, before Pershing, P. J.

At the same time, and by the same jury, a suit between the plaintiff and Conrad Reitler was tried. The cause of action was on a precisely similar note, and the defence was the same.

The principal question in the cases was the identity of the plaintiff with the person who aided the payee in perpetrating the fraud on the drawer of the note.

At the trial, the defendant admitted that the signature to the note was his, reserving the right to show that the note was not in the same condition as when signed. The plaintiff admitted that the washing-machine for which the note was given was worthless to the defendant, and that the consideration for the note entirely failed.

The plaintiff gave the note in evidence and rested.

The defendant testified, that on the 4th of September 1867, two men came to his house in a two-horse carriage—Simpson, the payee in the note, was one of them. He got out of the carriage and offered to sell defendant a washing-machine; defendant declined to purchase. He then asked defendant to become agent for selling the machines, and if defendant became agent, he should have half the profit. After further solicitation, the defendant consented to become agent. Simpson then drew up a paper that defendant was not to pay anything till he had sold $250 worth of machines. He then gave defendant a paper that he would be back in six months, and if defendant could not sell any machines, he would take all back without cost. "He then drew up an agreement; in that was mentioned I was to pay $125 to him as his half, provided I sold $250 worth; because he said I need not pay anything till I sold $250 worth, I signed it, or else I would not have signed it. * * * I don't know the name of the man who stayed in the carriage. I did not ask Simpson nor the man himself. * * * The agreement by which I was not to pay till I sold $250 worth of machines, and the note I signed, were all one paper."

Printed papers were shown to defendant, which he said were like those which were shown him.

One of them retained by defendant, and given in evidence in connection with defendant's testimony, was as follows:

"Receipt of Membership.

"Sept. 4th 1867.

"Received of Adam Schock one hundred and twenty-five dollars, for the right of Geo. W. Benton's Improved Washing-machine, patented April 30th 1865, for, to and in the township of Schuylkill, county of Schuylkill and State of Pennsylvania, for which this is a full and sufficient receipt.          E. D. SIMPSON."

[Brown *v.* Schock.]

" September 4th 1867.

"I hereby agree that the said Adam Schock need not pay for the said township until the profits on the said township are two hundred and fifty dollars, or more ; and if, after trying six months, he wants, I will take it back free of charge, if he uses due diligence.                    E. D. SIMPSON."

The defendant then called Christian Koch, and proposed to prove by him, that upon the next day (Sept. 5th 1867), after the transaction with the defendant, the same E. D. Simpson was in company with another person driving a two-horse team, selling the same patent-right in township rights, using the same printed agreements and receipts and forms of notes, and that the name of the other person who was with said Simpson was there given as Mr. Brown, and that he answered that name and entered the house of the witness as that person, and that this occurred within five miles of defendant's.   Offered for the purpose of connecting the plaintiff with E. D. Simpson, the payee of the note in this suit, and for the purpose of showing that the plaintiff had knowledge of the transaction between the defendant and payee of note, and is therefore a party to the fraud alleged.

The plaintiff objected to the offer; it was admitted and a bill of exceptions sealed.

Witness testified: "I live in East Brunswick.  I know about E. D. Simpson.  He was there 5th September 1867.  There were two in the carriage.  One wrote his name on the paper as E. D. Simpson.  Simpson called the other one Mr. Brown.  The one called Brown was not off the carriage till Simpson called him off. Everything was done; they were ready to leave; the witness and papers were done; they were ready to leave the house. * * * He turned around and said, ' Mr. Brown, come in.'  That is the way he came to name him ; Brown got off the carriage, fastened the horses, and followed Simpson into the room.  (Paper shown witness.)  This is my signature.  It was signed the day it was dated.  It is not the same as when I signed it.   There was more paper attached to it.  (Paper shown witness.)  This paper was given to me at the same time; the man called himself E. D. Simpson."  (Paper shown witness.)

The papers shown to witness, and identified by him, were a note from himself to Simpson, and " Receipt of Membership," in same terms as those of defendant.   Also a " patent deed," dated September 5th 1867, signed " Geo. W. Benton," with his seal, witnessed by " Lorretta D. Koch," conveying to Christian Koch, Jr., the right to sell and use the patent washing-machine in New Brunswick township; the consideration was $125.

The defendant then offered these papers in evidence to show that they were the same forms as those used in the transaction with defendant, E. D. Simpson being one of the same persons.

The plaintiff objected to the offer ; it was admitted by the court and a bill of exceptions was sealed.

Defendant then called Abram Sheip, and offered to prove by him the same facts as those testified to by Christian Koch, to show the identity of the plaintiff.

The plaintiff objected to the offer ; it was admitted by the court and a bill of exceptions was sealed.

The witness testified : That parties came to him in West Brunswick township, Schuylkill county, to sell a patent-right ; it was in September 1867, the day he signed the note to E. D. Simpson ; there were two in a carriage with two horses. " The name Brown was used there, but I don't know whether he called him Wesley Brown. * * * I was to pay nothing till I sold enough to make $150 or $200 ; half was to be mine and the other half he was to get. I signed papers to that effect. (Papers shown.) He left this paper with me. (Note shown.) I signed this note ; when I signed it I think it was a foot length ; on a sheet of paper."

The note of this witness was dated September 7th 1867. The other papers were substantially the same as the former papers.

It was admitted that the plaintiff in this case was plaintiff in suits against Koch and Sheip on their notes.

W. F. Shepherd, Esq., of counsel with plaintiff, testified that plaintiff resided in Allegheny county, New York ; the case was continued several times for the purpose of plaintiff being at the trial. " I notified him of the times when this case and Reitler's were on the list, and desired him to be present ; Brown is not here. I informed him what the witnesses said in the Sheip case. Brown's answer was it was false, and the reason he was not here was, after due deliberation on the evidence adduced before, I did not consider it legal evidence, and as he·was engaged in business and it would be a loss to him to come here, I informed him in my opinion it was not necessary for him to come ; that the·evidence was illegal. I knew the court had admitted all these papers in the Reitler case before I gave Brown the information."

John Boyer testified that he was at defendant's when two men with a carriage and two horses were there with the washing-machine. One, who was in the house, called himself E. D. Simpson ; he asked witness to put his name to the paper as witness.

Defendant rested.

The plaintiff gave in evidence the deposition of Simeon Anthony, the father-in-law of plaintiff. He testified that he saw E. D. Simpson endorse to plaintiff notes given by Sheip, Adam Schock and Conrad Reitler, and deliver them to plaintiff ; it was done October 5th 1867 ; he saw the consideration for the sale of the notes to plaintiff paid by him to Simpson ; it was 80 per cent. of the face of the notes ; both Simpson and plaintiff resided in Almond, Allegheny county, New York ; there were then ten other notes of the

same kind, the drawers of which the witness named, sold to Brown at the same time and endorsed by Simpson; there were no printed agreements to the notes when sold, and none cut off in the presence of witness.

There was evidence by a number of witnesses that the plaintiff was in Almond on the 4th, 5th and 7th of September 1867.

M. L. Major testified that in September 1867, he was in Schuylkill county, employed by Simpson and E. K. Robinson, selling Benton's washing-machines. He effected sales to Abram Sheip, Adam Schock and Conrad Reitler; the sale to Schock was made September 4th, the others September 7th. Robinson was with him when he effected the sales, and all gave their notes payable to Simpson's order. The plaintiff was not with him at the time of making any of the sales.

The following are points of plaintiff, with their answers:

2. There has been no legal identification of the plaintiff in this suit as to his connection with the negotiation and sale of the washing-machine or patent right to the defendant; that, although the consideration failed between the original parties to the note, yet no knowledge has been traced to the plaintiff of said failure of consideration before the taking of the note by him from Simpson, or at the time of the taking of the note and it being proved by the plaintiff, which proof is uncontradicted in the cause, that he gave consideration for the note, and that it passed to him before maturity, he is entitled to recover the full amount of the note, with interest from date.

The court answered:

" We cannot affirm this point in terms, as that would be to take questions of fact from your consideration. We have said to you that the identification of Wesley Brown, as one of the parties present when the notes were made, is very slight, and that he has a right to recover, if an innocent holder for value; that he gave value is in evidence before you."

3. The rules of evidence, established by the decisions of the Supreme Court, allowing great latitude in questions of fraud, have no application in the case at issue against the plaintiff, he having in no way been identified as having connection with it.

The court answered:

" We cannot answer this point affirmatively. If you find the plaintiff has in no way been identified with the fraud of Simpson, your verdict should be in his favor."

4. Even though the evidence on the part of the defendant should be considered as tending to identify the plaintiff, it would be only primâ facie, and after the evidence given by the plaintiff in this case without further proof on the part of the defendant, the plaintiff is entitled to recover.

The court answered:

[Brown *v.* Schock.]

"We decline to answer this point as requested. The whole evidence on this subject is for your consideration. We have already stated where we think the weight of the evidence lies."

6. Under all the evidence in the case, the plaintiff is entitled to recover.

The court answered this point in the negative.

The court charged : * * * "It is agreed that the consideration for these notes as between the original parties entirely failed, and had suits been instituted by Simpson against these defendants, he could not have recovered under the evidence in these cases. That a fraud was perpetrated upon Schock and Reitler is not disputed. Wesley Brown, however, claims to recover in these actions on the ground that he is an innocent holder of these notes for value, and if he is, he should have your verdicts, however gross the fraud perpetrated by Simpson upon these defendants. If Brown was not a party to the fraud, and knowledge of it was not brought home to him before, or at the time he claims to have purchased these notes, he has the right to recover. The taking of a negotiable note under circumstances which ought to excite the suspicion of a prudent man, was held in Phelan *v.* Moss, 17 P. F. Smith 59, not sufficient to prevent the recovery of a bonâ fide holder for value; nor will gross negligence avail to defeat an innocent holder for value, as held in State Bank *v.* McCoy, 19 P. F. Smith 204. It is claimed on the part of the defendants that Wesley Brown was along with Simpson at the time these notes were given and was therefore a party to the fraud." The court then recapitulated the evidence bearing on the question of the identity of the plaintiff with the man who was with Simpson, and proceeded :

["The direct evidence of identification is very slight and is met by the depositions of six or seven witnesses, who state that on the 4th, 5th and 7th days of September 1867, Wesley Brown was at home in Almond, Allegheny county, New York. The weight of evidence therefore is that Wesley Brown was not in the county of Schuylkill on the dates at which the notes payable to E. D. Simpson were given.] The deposition of M. L. Major was also read on the part of the plaintiff to show that Wesley Brown was not in this county at the time the notes were given. Major states that he was in Schuylkill county in September 1867, part of the time in company with a man by the name of Robinson ; that he, Major, sold washing-machines to Schock, one of the defendants, on the 4th of September ; and to Reitler, the other defendant, on the 7th of September, that he took the notes from the parties, and cannot recollect that any one was with him ; that Wesley Brown was not along. This evidence is in conflict in some of its statements with other evidence in the case. The other witnesses swear that two men were along when the notes were given ; the one called himself E. D. Simpson, in whose name the notes were taken, and John

[Brown *v.* Schock.]

Boyer testifies that he happened to come to Koch's when the two men were there, and at Simpson's request he witnessed one of the papers.  It would rather appear either that Major was not here at the time he mentions, or if in this county he went by some other name than that of Major.] * * * You have heard the statement of Mr. Shepherd, counsel of Mr. Brown, voluntarily made, as to the reason of Mr. Brown's absence.  Mr. Brown is himself a lawyer, as appears by the evidence, and therefore capable of deciding on the advice given him by his attorney.  He had a right to follow that advice.  It may be a matter for regret that he has not appeared here, as, had he seen proper to come and testify, the question of identity would in all probability have been satisfactorily settled."

The jury found for the defendant.

The plaintiff took a writ of error, and assigned for error :

1–4.  The answers to the points.

5–7.  The rulings on the questions of evidence.

8, 9.  The parts of the charge in brackets.

*W. F. Shepherd* (with whom was *J. Ellis*), for plaintiff in error. —The question of identification was a preliminary one, to be determined by the court : Cornfield. *v.* Parsons, 1 C. & M. 730 ; 1 Phillips on Ev. 6 ; Whitelock *v.* Musgrave, 1 C. & M. 510.

*O. P. Bechtel* (with whom was *W. R. Smith*), for defendant in error.—Facts bearing such relation to a transaction as are calculated to persuade as to the question of fraud, are admissible : Stauffer *v.* Young, 3 Wright 455 ; Maples *v.* Browne, 12 Id. 458 ; Stevenson *v.* Stewart, 1 Jones 307.  The question is whether the evidence can throw light on the transaction : Heath *v.* Page, 13 P. F. Smith 108 ; Angier *v.* Angier, Id. 451 ; Simons *v.* Vulcan Oil Co., 11 Id. 202 ; Woods *v.* Gummert, 17 Id. 136 ; Caldwell *v.* Boyd, 7 Id. 321.

Chief Justice AGNEW delivered the opinion of the court, March 8th 1875.

The question in the court below was upon the competency of the evidence contained in the bill of exceptions.  Was Brown, the plaintiff, the same person as the man called Brown, who accompanied Simpson in his rounds while perpetrating a series of frauds upon citizens of Schuylkill county ?  This was a question of fact for the jury, and might be proved by circumstances, just as in any other question of identity.  The rules of evidence are the same in criminal and civil cases when they pertain to questions which must be the same in their nature.  Whether a particular man perpetrated a fraud or a crime, is an inquiry precisely the same in its nature in all cases, to wit, a natural conclusion from the facts proved.  In the proof of the circumstances from which

[Brown *v.* Schock.]

the conclusion is to be drawn, the evidence must often proceed step by step. No one witness may be able to prove all the facts, or, indeed, more than a single fact. Hence, to exclude every fact or circumstance because it does not of itself make out the proof, is simply to decide that circumstantial evidence cannot exist in the case, where the purpose is to prove identity. Here we have a case where two men passed through the country selling a patent right for a washing-machine, riding in the same two-horse-carriage, and using certain blank forms as the instrumentality for perpetrating their frauds. One of these called his fellow Brown on two separate occasions, and under circumstances tending to show that the name rose spontaneously to his lips. The plaintiff bears the same name, and is found in possession of the fruits of the fraud. He accounts for this possession by a formal transfer from Simpson, a known confederate with the man Brown, who was with him. The witness called to prove the transfer, is his own father-in-law, and the account he gives is, that Simpson brought in fourteen or fifteen of those notes, asked Brown to buy them, and said they were good. Brown said he was willing to buy good notes; took them all without inquiry into the circumstances of the drawers; paid eighty per cent. for them, and did not protest the notes to hold the endorser. Then Brown brings suit on some of them. The evidence of identity was objected to, is received by the court, and Brown is so informed by his counsel, and this case is continued several times to procure his attendance. He refused to appear, and his refusal is put now on the ground that he was informed by his counsel, and believes himself, that the testimony of his identity was illegal. Supposing that to be an honest opinion, yet it did not detract from the primâ facie effect of his declining to appear as evidence against him. If he had a strong motive to appear and would not, he leaves himself open to suspicion. The question is not upon his right to stay away, but upon the motive which may have caused his absence. A man of ordinary intelligence must know that his failing to appear when he had a strong motive to appear, would be evidence against him. If he relies upon his ability to disprove the motive imputed, he takes the risk, but he leaves the effect of his conduct, as a matter of evidence for the opposite side, to go to the jury, who must weigh both sides to determine the real motive. If he knew he was not the Brown who accompanied Simpson, the accomplice, his motive was very strong to appear, and by his presence convince the witnesses that he is not the same person called Brown, who accompanied Simpson. Omitting to do that by which he could at once dissipate doubt, he leaves his motive to be determined by the jury, assuming the burden of disproving it by his rebutting testimony. Therefore, we cannot say the circumstances, as evidence for the defence, are to be taken away from the jury. In such a case, it is evident there can be no

[Brown *v.* Schock.]

difference, because the note is negotiable.  The evidence here does
not concern the note, but the identity of the person holding the
note.    Herein is the precise difference between this case and
Phelan *v.* Moss, 17 P. F. Smith 59.    There the question was
whether the bona fides of the holder were destroyed by taking the
note at a large discount under suspicious circumstances.    Here
the question is whether the holder is the identical person who
aided in the perpetration of the fraud which avoids the note.    In
the former case it was a question of mere good faith in the pur-
chase.    Here it is the identity of the person who committed the
fraud itself.    Here the manner of purchase is only a link in the
series of facts tending to prove that the holder is one and the same
person with the one who committed the fraud.

In a question of circumstantial evidence, the proof derived from
the circumstances is a question of natural presumption, and is to
be found by the jury.    The strength of this proof depends on the
probability resulting from the facts.    The presumption thus aris-
ing, being a natural one, is to be determined necessarily by the
jury, and not by the court.    It is the right of the party to have
this submitted to the jury, unless it be so weak and inconclusive
that as a matter of law no probability of fact can be drawn from
the combined circumstances.    If in such a case as this we say that
all the combined circumstances afford no evidence, we take from
the party the right of trial by jury, a right of the utmost import-
ance in a matter in which the natural instinct and judgment of
men are the legal and constitutional right of a party.

Judgment affirmed.