James W. Kyle, by his Next Friend and Mother, Eliza Kyle, *v.* The Southern Electric Light and Power Company, Appellant.

*Negligence—Injury by fall of electric light pole—Evidence—Question for jury.*

In an action to recover damages for personal injuries to a child eleven years old, caused by the fall of an electric light pole, the case is for the jury where the evidence showed that the pole was thirty-five feet in length, and from twelve to fifteen inches in diameter; that its weight was from twelve to fifteen hundred pounds; that the evidence for the plaintiff showed that there were but three men employed in lowering the pole, while the evidence for defendant showed that there were eight engaged in the work; that the pole was crooked, and that this increased the danger in lowering it; that the pole turned while the men were in the act of lowering it, which was one of the causes of their failure to retain control of it; that there were other and safer methods of taking down poles than the one employed, but that they were not usually resorted to in taking down small poles; that the defendant claimed that the falling of the pole was attributable solely to the nature of the ground in which it was set.

*Practice, C. P.—Charge of court—Assignments of error.*

The general effect of the charge of the court rather than a casual expression in it must govern the interpretation or construction of it.

In an action to recover damages for personal injuries where the court has charged that the damages should be limited to compensation for the pain suffered, it is not error for the court to say " there is no rule of law or morals, nothing but your common sense to guide you; and all that the court can do is to admonish the jury to be fair and just as between the parties, and to admonish them that extravagance either in giving too much or giving too little will not be tolerated by the court."

Argued Jan. 10, 1896. Appeal, No. 364, Jan. T., 1895, by defendant, from judgment of C. P. No. 3, Phila. County, June T., 1893, No. 429, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for personal injuries.

The facts appear by the opinion of the Supreme Court.

When George W. Dougherty, a witness for defendant, was on the stand, counsel for defendant made the following offer:

I propose to prove by this witness the manner of taking

down poles of this size and character, the precautions which are adopted, the number of men employed, the way in which they are disposed, and, generally, all things in that connection; and will show that in point of fact the same precautions were taken and the same means employed as are always employed with similar poles.

Objected to. Objection sustained and bill sealed. [1]

Dougherty was asked the question, What other precautions are taken in similar cases to let similar poles down—to prevent their falling?

Objected to. Objection sustained and bill sealed. [2]

The court charged in part as follows:

[It is also in evidence, and from the testimony of the defendant itself, that the character of the pole itself—its crookedness—caused it to swerve from a straight line of direction in which they intended it should fall. As defendant knew that, it was its duty to provide means which would prevent the swerving of the pole, either by reason of its crookedness or from any other cause.] [3]

[Again, it was equally important that it should consider the nature of the ground upon which it was operating while engaged in lowering that pole. It was its duty to know and see the nature and character of the soil as it took down the pole. It has not been mentioned in the evidence, but it is not conceivable that it could dig down five, six, or eight feet into the earth without knowing the exact character of the soil and the manner in which the pole was imbedded. If, therefore, this pole fell because the earth suddenly gave way it is for you to say, when it had knowledge of the soil, whether careful and proper means should not have been used by the defendant's servants to prevent that very thing happening.] [4]    [This was not the case of an erection of a pole, but the taking down of a pole by the company which had put it up, presumably because it was the owner of the line, and that is a fact—the fact of putting the pole there—from which the jury have a right to infer whether it knew or should have known the character of the ground.] [5] I mention this because it has been argued to you as the only reason why the pole fell was because the earth, being made earth and not being firm and hard, suddenly gave way and the pole fell suddenly upon being relieved from the pressure and

resistance of the earth. [The first inquiry for you is, were there sufficient men, in number, engaged in that employment? The employees and witnesses for the defendant say that they had the usual number of men. It is for you to say whether, from the peculiar circumstances of this case—the locality, the difficulty of removing the pole, the crookedness of the pole itself, the condition of the earth, whether, considering all these things, it had a sufficient number of men,] [6] or if the ordinary number of men was used in removing that pole—as they would have under ordinary circumstances—was that enough upon that occasion? Because if it had not sufficient men for the proper performance of the work, and if the pole fell in consequence thereof, then the defendant is liable.

There was evidence introduced by the defendant, the character of which was to show that the ordinary methods of removing poles, the ordinary number of men, appliances and means which were universally used, were used on this occasion.

[The witness who was called to prove that the number of men, the means and all the appliances for such purposes were what is commonly used, said, among other things, that this company, on this occasion, had adopted a new instrument to be used in removing poles, and he was frank and candid enough to say that it used it because it saved the expense of one man.] [7] Gentleman of the jury, he explained to you the instrument which took its place, and from what was said about that it was for you to say whether it was as safe an instrument as the one which it replaced; because no one has a right to supply a cheap instrument which may be dangerous not only to those who use it, but to the community. [I say it is for you to compare the two things—first the new and the old—and then you have a right to draw the inference as to the negligence of the defendant in this respect, because if it adopted a cheaper means, because it was cheaper, it took all the risk and responsibility.] [8]

[Again, the witness who was to prove that it used precisely the same means that other people use also told you that other companies used a block and cable, and he qualified that by saying "for larger poles." It is evident, from that very qualification, that a pole of this kind is more safely removed by a block and tackle than by the means adopted on this occasion. And

if the company took a cheap or unusual or unsafe way of removing poles, and took the responsibility of measuring what the size of the poles ought to be upon which it should use a block and tackle or the cheaper means, then it took the risk, and must take the consequences if injury arises in any degree through the adoption of that particular and unusual mode of performing its duties.] [9]

Again, if the mode of removing this pole was a proper one, and if the number of men employed was sufficient, if the means for guiding the pole were proper, then the question arises as to whether these seven or eight men were properly used so that the work on that occasion would be safe, reasonably safe at least, to those who might happen to be in the vicinity.

There is some little contradiction in the testimony. Two witnesses for the plaintiff said there was but one man under the pole at the time it gave way. I understood the witnesses for the defendant to say that there were three men under it. [In a matter of this kind, it is not a question of mere numbers, but rather a question of sufficiency, and it is for the jury to say that, considering every fact and circumstance in this case, whether, even if there were three men there, that was sufficient upon that occasion, and whether, under all the circumstances in this case, it was sufficient to prevent ordinarily that which did happen. That is the simple question for you to determine, whether the means used—either the method or the tools or the number of men—upon that occasion were properly used.] [12]

[In view of the fact that this pole was being lowered in perhaps one of the most populous portions of the city, it is for you to say what degree of care, what means, what number of men should have been used upon such an occasion to make it safe ; whether it ought to be one, two, or three men, or whether it ought to be by cheap means. That is the question you are to solve, and upon it may depend even the lives of citizens.] [10]  [I ask you, therefore, to give to this case your most careful consideration in ascertaining whether the proper means were used, and that requires, as I have already said to you, that you should consider the nature of the ground in which the pole was placed —and it was the duty of the defendant to know the actual condition of the ground, and whether it was made earth or otherwise—then take into consideration the locality, the situa-

tion, the peculiarity of the pole itself, and everything connected with it, and say whether the defendant used reasonable means to make the lowering of the pole safe.

If in any of the particulars I have suggested to you it has failed, either in the number of men, the means employed, or in any other particular, then it was negligent and responsible for this accident, and ought to respond in damages.] [11]

As I have already said to you, the plaintiff cannot recover, notwithstanding the fact that the defendant may have been grossly negligent, if he himself was negligent. If his acts and his conduct contributed to the accident he cannot recover. I might say at this stage that so far as notice was given, the defendant was not required to give notice to any one. It was engaged in what to themselves was dangerous work, and it would, of course, be dangerous for any one who came within the line or range of the danger of such work. In fact, it was such work that any one might know it to be dangerous to come within range of the pole. I say this because it is contended that they should have given notice of warning. You will understand that the citizen, whether boy or man, if he has sufficient knowledge of the danger of the situation must take the consequences if he heedlessly walks into that danger.

There are a few things to be considered under the question of negligence. As to whether this boy was negligent: First of all, you will consider that the workmen there had themselves given the line of direction of the falling of the pole itself. The boy was not upon the line of the pole; in addition to that, he was under the shed, and not therefore likely to be struck if the pole took the direction which evidently everybody in connection with it intended it should take. Again, there was no one who specially informed him that the position he occupied was dangerous. I now have reference to what the policeman did, which was simply to keep the workmen free from the crowd. But there is no evidence that any one gave admonition to this boy that danger was to be anticipated. How far the testimony goes to show that he was in the line of vision of those who were working, I leave to you. If they could see him, and there was no warning, you should take this into consideration to excuse him, so far as it can, from a knowledge of the dangerous position in which he was.

After all, if there had been any evidence · that this boy had been admonished that he was in a position likely to be struck by the falling pole, it is your duty to take into consideration his age. He is to be held responsible, under all the circumstances, as a boy of like age, under like circumstances, would be held responsible. If a boy of like age had acted precisely as he did you could not expect him to do more. These are all elements to be taken into consideration, as to whether he was negligent or not. First, you should take into consideration the locality; he was in a position under the shed, and not in the line of the falling pole; and that no one warned him; and that he is a boy twelve years old and not to be held to the same degree of care which an older boy, or an adult, should have been.

If you come to the conclusion that the defendant was negligent and that the boy was not, the question of damages arises, and that is one which is always difficult, and I have no doubt always gives the jury the most trouble in order to arrive at a conscientious verdict.

Damages for injuries of this kind are only to be for the pain and suffering which occurred at the time, which was the result of it up to the present time, and which may be the result of these injuries hereafter; also for any disfigurement or injury which is of a permanent character, and which the boy suffered from the injuries received upon that occasion. Ordinarily, in cases of this kind, there is a claim for loss of earning capacity. But that question does not arise in this case. It is not claimed that the pain is permanent or that his earning capacity is in any way diminished. It therefore comes down to a question of the pain and suffering which was the result of these injuries.

All persons are not affected alike by pain. We are told that there are persons who may be injured in a most serious manner and experience but a slight degree of pain; there are others to whom bodily injury of the slightest character produces the most intense suffering. We can know only of pain from that which we have ourselves experienced; from the effects which it apparently has upon others, or from the injury inflicted. So that when a jury of conscientious men come to consider questions of this kind there may be a wide difference of opinion. A man to whom pain or personal injury is of little moment, and upon whom it may produce but little pain, of course has a very

slight conception of the pain and suffering arising from an injury, but a man of acute sensibility may have a high and exaggerated conception as to how pain should be compensated. Twelve men who conscientiously come to a consideration of a case of this kind should certainly be competent to arrive at a fair and just conclusion—certainly a better and fairer conclusion than an individual could. [There is no rule of law or morals, nothing but your common sense to guide you, and all that the court can do is to admonish the jury to be fair and just as between the parties, and admonish them that extravagance, either in giving too much or giving too little, will not be tolerated by the court.] [13] All that juries can do is to come as near as possible to a fair determination of every question submitted to them, and I am perfectly satisfied that you will give this case the full and fair consideration that it deserves; and if you arrive at the conclusion that the plaintiff ought to have a verdict, then you will give him such a verdict as shall be satisfactory to your own consciences and to the court; having done that, it is a matter of no consequence as to how any one else regards it.

Defendant's points were among others as follows:

3. The verdict should be for defendant. *Answer :* Refused. [15]

4. The defendant and its workmen were required only to adopt the ordinary and usual precautions adopted and used in similar cases ; and if such precautions were adopted and used, the defendant was not guilty of negligence and the verdict must be for defendant. *Answer :* I affirm that to be the law in this case, with the qualification and explanation which I have already given you in my charge in general. [16]

Verdict and judgment for plaintiff for $2,500. Defendant appealed.

*Errors assigned* were (1, 2) rulings on evidence; (3–13, 15, 16) above instructions, quoting them; (14) that the charge as a whole tended to mislead and bias the jury.

*J. Howard Gendell,* for appellant, cited, on the question of negligence : Norristown v. Moyer, 67 Pa. 355 ; Wood on Nuisances, 324, 1893 edition; on the question of damages : Phila.

& Reading R. R. v. Adams, 89 Pa. 31; Pa. R. R. v. Ogier, 35 Pa. 60; R. R. v. Kelly, 31 Pa. 372; R. R. v. Books, 57 Pa. 339.

*Frederick J. Shoyer*, for appellee.

OPINION BY MR. JUSTICE McCOLLUM, April 6, 1896 :

The defendant's employees while engaged in taking down a wooden electric light pole on Federal street in this city, on the 26th of May, 1893, lost control of it, and the result was that it fell upon and seriously injured the plaintiff, who was then but eleven years old. The case in hand relates to this occurrence, and it was brought to enforce the plaintiff's claim that the negligence of the men intrusted with the work of taking down the pole was the proximate cause of the injury he received. The burden of showing the negligence of which he complained was on him, and he introduced evidence to prove that the men engaged in taking down the pole failed to exercise the care required by the circumstances and that the appliances used in the performance of the work were inadequate. This evidence was met by evidence introduced by the defendant tending to show the observance of due care by its employees and the use of appliances commonly employed in such work. If the evidence submitted by the plaintiff considered by itself was sufficient to sustain his contention it presented a question which the court, notwithstanding the opposing evidence, was bound to submit to the jury.

The testimony respecting the size and weight of the pole showed that it was thirty-five feet in length and from twelve to fifteen inches in diameter, and that its weight was from twelve to fifteen hundred pounds. There was a decided conflict in the testimony in regard to the number of men engaged in lowering the pole at and immediately before the time it fell. The evidence on the part of the plaintiff showed that there were but three men employed in that most critical and perilous part of the work, and the evidence on the part of the defendant showed that there were eight men, including the foreman, present, and that as many of them were engaged in it as were required for the proper performance of it. There was some evidence in the case from which it might be reasonably inferred that the pole was crooked and that the danger in lowering it

was increased thereby. One of the witnesses for the defendant said that "there was a sort of a hump on the back of the pole" and another one said, "there seemed to be a kind of bend" in it. There was a general concurrence in the testimony to the effect that the pole turned while the men were in the act of lowering it, and that the turning of it was one of the causes of their failure to retain control of it. It appeared in the testimony of one of the defendant's witnesses that there were other and safer methods of taking down poles than the one employed in this case but that they were not usually resorted to in taking down small poles. It also appeared in the evidence of another witness called by the defendant that there were two kinds of butting pikes used in taking down poles, one of them being composed entirely of wood in the form of the letter X, and the other consisting of a single pole with "an iron fork at the top." The latter was used in taking down the poles in question and because it had the iron fork and could be operated by one man, the witness considered it better than the former in the handling of which two men were required. The cross-examination of the plaintiff's witnesses and the examination in chief of the defendant's witnesses together with the unquestioned statement in the charge in relation to the argument addressed to the jury, unite in showing that the principal defense made on the trial was that the falling of the pole was attributable solely to the nature of the ground in which it was set, and if so that the defendant was not responsible for the consequences.

It is believed that the evidence we have summarized required the submission to the jury of the question whether the negligence of the defendant was the cause of the injury the plaintiff received by the falling of the pole. It was the duty of the defendant to furnish sufficient men and adequate appliances for the work of taking down the pole, and it was liable for the consequences of its failure to do so. If it discharged its duty in this respect it was still answerable for the consequences of the negligence of its employees in the performance of the work. Whether it did discharge its duty in the premises, and whether its employees exercised the care required by the circumstances, were questions for the jury under proper instruction from the court.

Two of the specifications of error are based on rulings upon

offers of evidence, one is founded upon the refusal to charge that " the verdict should be for the defendant," and thirteen relate to and complain of the instructions. The specifications which refer to rulings upon offers of evidence are overruled because the rulings complained of were changed on the trial and the witness was allowed to testify in accordance with the offers. The specification in regard to the refusal to charge that " the verdict should be for the defendant " is also overruled because as we have already seen there were questions of fact to be determined by the jury. .

The third, fourth, fifth, sixth, tenth, eleventh and twelfth specifications are founded upon quotations from the charge in which the attention of the jury was directed to matters proper for their consideration in passing upon the controlling question in the case. These matters we have already summarized and a detailed reference to them in this connection is not necessary. We discover nothing in the manner in which they were presented or in the comments upon them that can be fairly regarded as objectionable. In the extracts from the charge embraced in the seventh, eighth and ninth specifications the court referred to the butting pike used in taking down the pole as cheaper than another butting pike described by the defendant's witness as in the form of the letter X, and to the block and tackle as a safer appliance than was used in this case. As it appeared in the testimony of Fitzpatrick that the butting pikes furnished by the defendant saved the cost of an extra man, and in the testimony of Dougherty that the block and tackle method gives the men full control of the pole from the time it starts until it reaches the ground, a reference in the charge to these matters was not improper.

A single sentence from the instructions in regard to damages is the subject of complaint in the thirteenth specification. We have often had occasion to characterize this method of attacking an instruction as unfair to the trial court, and to hold that the general effect of the charge, rather than a casual expression in it, must govern the interpretation or construction of it. Applying this rule to the case in hand the instruction in relation to damages furnishes no substantial ground for reversing the judgment. The jury were fairly limited to compensation for the pain suffered, and it cannot be justly said that there was any-

thing in the instruction having a tendency to unduly enhance the damages.

The defendant has no substantial reason to complain of the answer to its fourth point, nor is there any reasonable ground for the claim that the charge as a whole tended to mislead and bias the jury.

The specifications are overruled and the judgment is affirmed.