Walters *v.* The Western and Southern Life Ins. Co., Appellant.

Argued April 12, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*John L. Nesbit,* and with him *H. Carl Wasson,* for appellant.

*Maurice P. Breene,* for appellee.

OPINION BY BALDRIGE, J., May 8, 1934:

This action in assumpsit was brought by the plaintiff against the defendant to recover on two life insurance policies, each of which provided, in case death was caused by accidental means, for the payment of additional benefits equal to the face amount of the policy. The plaintiff sought and obtained a verdict for the double indemnity; this appeal followed.

The defendant admitted its liability for the face amount of the policies, but denied double liability, alleging that the death of the insured was not accidental but self-inflicted.

The insured lived with his wife and stepdaughter in the city of Franklin. His wife was employed in a restaurant in that city, and on April 11, 1932, finished her day's work about a quarter of eight. After waiting about five minutes for her husband to come, as was his habit, she left her place of employment, meeting him on the street near their home. They entered the house, the husband removed his overcoat, and they talked about a half hour in regard to their moving. Then the wife went upstairs. Five or ten minutes later the husband put on his overcoat, followed her upstairs into the bedroom, and took a revolver that

was hanging on the wall, stating that he was going to clean it. He crossed the hallway, entered the bathroom, and closed the door. About five minutes later the wife heard a sharp report, went to the bathroom, tried to enter, but could not entirely open the door. She was able, however, to see her husband's body on the floor in a sitting posture against the door. Doctors were summoned and found the decedent unconscious, with a gunshot wound in his head. The bullet entered the middle of his forehead, about two inches above the root of the nose, took a downward course, and came out at the temple near the edge of his right eye. He was taken to the hospital and died without regaining consciousness. The gun and a discharged shell were found in the bathtub, blood was present on the floor, on the clothing of the insured, and on the rim and bottom of the bathtub. Mark Hanna, called by plaintiff, testified that he arrived at the house just after the shooting and found two loaded shells on the floor of the bathroom.

The plaintiff's theory is that the decedent was standing facing the side of the bathtub, which was on the right side of the room and back of the door; that he had been holding the pistol in front of him in his right hand and working the loading mechanism with his left, ejecting the shells from the chamber as they were fed therein from the magazine; that the gun either dropped out of decedent's hands or was jerked out of his right hand by the working of the breech; that the decedent lunged forward in an attempt to catch the gun in its fall, and while in that posture the hammer of the gun struck either the side or the bottom of the bathtub, causing its discharge. As a result, the empty shell which was found in the bathtub with the pistol had been ejected, and the pistol automatically reloaded.

Dr. Zerbe, one of the attending physicians, called by

the plaintiff, testified that he had had considerable experience with firearms, and expressed the opinion after tests were made with this gun by him, that it was possible for the gun to be discharged with the hammer down, if the gun fell in the manner as contended by plaintiff. He observed that there was an absence of gunpowder marks or burns on the deceased's forehead, which would have been present if the gun had been discharged within less than six inches. This witness said further that it would be a physical impossibility for him (the witness) to discharge the gun and inflict such a wound, except by pulling the trigger with his thumb, which would make the aim very uncertain.

The defendant, on the other hand, contends, most earnestly and with considerable plausibility, that the gun could readily have been fired at such a distance that it would not have produced burns or powder marks on the skin; that it is highly improbable that the gun was discharged by striking against an object; and that if it had been accidentally discharged while removing a shell, it would have required the holding of the gun above and opposite the head—a most unlikely position.

There is no evidence of any motive for the decedent to have taken his own life. While proof of an incentive is not necessary, it is well known that, as a rule, people desire to live, and the presumption is that a person does not voluntarily destroy what is the most precious of all possessions. A motive, however, is ofttimes helpful in solving a mystery of this character. No one can definitely say whether the death was the result of an accident or self-destruction. Here, then, we have conflicting theories, both depending on circumstantial evidence, which was for the jury to consider. While the inference of suicide may be strong, that fact was not conclusively proven. We can not say that the plaintiff's evidence is so weak and incon-

clusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances: Curran v. The Natl. Life Insurance Co., 251 Pa. 420, 430, 96 A. 1041. It is a matter of common knowledge that the improbable, and sometimes what seems to be the impossible, does happen. We know that firearms are accidentally discharged. We can not hold, therefore, that the inevitable conclusion is that the insured committed suicide.

The court instructed the jury, in substance, that it was incumbent upon the plaintiff to prove that death was due to an accident, and in determining that question the plaintiff was entitled to the presumption that the insured did not take his own life; that if the jury was satisfied by the fair weight of the evidence that death was accidental, then the burden of producing evidence that the fatal wound was intentional and self-inflicted would pass to the defendant. We think that was a correct statement of the law. The party alleging suicide must prove it, as the mere fact of death in an unknown manner creates no legal presumption of suicide: Continental Ins. Co. v. Delpeuch, 82 Pa. 225. It was stated in New York Life Ins. Co. v. Anderson, 66 F. (2d) 705, 710: "If there were facts and circumstances that indicated the death was accidental, this, aided by the presumption against self-destruction, would entitle plaintiff to recover, unless the defendant by a preponderance of the evidence establishes its affirmative defense. If defendant was not able to meet this burden, the law would be with the plaintiff, and she would be entitled to the double indemnity." See, also, Davis v. Reliance Life Ins. Co., 12 F. (2d) 248; Ford v. Dick Co., 288 Pa. 140, 146, 135 A. 903. "In order to overcome the presumption against suicide, the evidence must show that the death was self-inflicted, New York Life Ins. Co. v. Weaver (C. C. A.), 8 F. (2d) 680; or facts inconsistent with

any reasonable hypothesis of death by accident, Aetna Life Insurance Co. v. Tooley (C. C. A.), 16 F. (2d) 243; or the existence of such circumstances and conditions as to leave room for no other reasonable hypothesis than that of suicide, Wilkinson v. National Life Association of Des Moines, 203 Iowa 960, 211 N. W. 238'': Mutual Life Ins. Co. v. Graves, 25 F. (2d) 705. See, also, Frankel v. New York Life Ins. Co., 51 F. (2d) 933.

After a review of this testimony, and assuming, as we must, the truth of plaintiff's evidence and every inference fairly deducible therefrom (Mitchell et al. v. Dunn, Admrx., 312 Pa. 276, 279, 167 A. 774), we have reached the conclusion as stated in Slattery v. Great Camp No. 2, 19 Pa. Superior Ct. 111, 113: ''It was not possible for the trial judge upon the facts presented, to say that the only and inevitable conclusion therefrom was that the insured had committed suicide [by drowning]. The inference of suicide was strong but the evidence was not conclusive. Suicide is a question of intention to be inferred from circumstances where no direct evidence exists. To the jury then must the case have gone to determine this question.''

We have given consideration to all the assignments of error, but are of the opinion that the defendant had a fair trial, and that the learned judge below correctly determined the questions of law involved, and gave an impartial charge to the jury.

Judgment is affirmed.