## Walters *v.* Western & Southern Life Insurance Co., Appellant.

Argued March 25, 1935.   Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

384

*John L. Nesbit*, with him *Eugene Mackey* and *H. Carl Wasson*, for appellant.

*Maurice P. Breene*, for appellee.

OPINION BY MR. JUSTICE MAXEY, April 15, 1935:

Plaintiff brought suit against defendant to recover on two life insurance policies, identical in phraseology, and technically known as "Industrial Policies Accidental Death Benefit." They will hereafter be referred to as the policy. The policy provided that the insurance company "upon receipt of due proof of the death of the Insured, after attainment of age 5 years and prior to the attainment of age 75 years, as a result of bodily injuries caused directly, exclusively and independently of all other causes, by external violence and purely accidental means, occurring on or after January 1, 1929, and provided any such death occurs within ninety days after the date of such injuries, and provided such death does not occur, or be caused by self destruction, while sane or insane, . . . . will pay an Accidental Death Benefit equal to the original face amount of insurance then payable as a Death Claim under the provisions of the Policy, less, however, the amount of any disability benefit which accrues by reason of the same bodily injuries." The policy also contains other provisions not applicable here. The "face amount," payable as a death claim, in each policy was $500, or a total of $1,000 in the two contracts. The above clause as to "accidental death benefit" meant that if the insured met with an accidental death a sum equal to double the original face amount of each policy would be paid the beneficiary, i. e., $1,000 on each policy.

The case was tried in the court of common pleas and a verdict returned in favor of plaintiff in the sum of $2,-116.17. The court discharged rules for a new trial and

for judgment n. o. v. An appeal was taken to the Superior Court of Pennsylvania, which affirmed the judgment of the lower court (113 Pa. Superior Ct. 221, 172 A. 406). This court then allowed an allocatur.

The circumstances attendant upon the death of the insured were these: The insured and his wife entered their house together at 8 p. m., April 11, 1932. They conversed in the house for half an hour. The wife then went upstairs to their bedroom. The husband, five or ten minutes later, joined her there. He got his revolver, saying he was going to clean it. It had been hanging on a holster for about three weeks. He took it to the bathroom. In about five minutes his wife heard the report of a pistol shot. She was unable to open the door because he was sitting against it. She summoned help and the door was opened. A doctor who made an examination found that a bullet had entered the middle of the insured's forehead and had emerged at the edge of the right eye in the general region of the right temple. "The course [of the bullet] must have been from above to the right and downward," he said. A 32-calibre gun was picked up in the bathtub. The insured died without regaining consciousness, two days later. There were no gunpowder marks or burns around the wound, thereby indicating, as was testified, that the muzzle of the gun must have been more than six inches from the point the bullet entered.

Plaintiff to make out a prima facie case had to do more than merely produce the policy and prove the death of the insured. She had to establish death "as a result of bodily injuries caused directly, exclusively and independently of all other causes, by external violence and purely accidental means, occurring on or after January 1, 1929," and she also had to prove that "death occurred within ninety days after the date of such injuries."

The first assignment of error is based upon the refusal of the court to enter judgment n. o. v. for defendant. We find no merit in this. There was sufficient evidence produced by plaintiff to warrant the jury's inferring that

the death of the insured was caused "by external violence and purely accidental means." The record discloses nothing to indicate that the deceased planned suicide. No motive for suicide appears. Appellant says: "There is no proof that the revolver was loaded when the deceased took it from his wife's room, and there is no evidence that he took or had with him tools necessary for cleaning the gun." Such proof was not vital to plaintiff's case. Even proof to the contrary would not necessarily indicate suicide. Appellant also says: "Under the evidence it is consistent to infer that the gun was empty and that any cartridges found on the bathroom floor were dropped there while the insured was filling the magazine from cartridges in his pocket to carry out his plan of suicide." This was properly submissible to the jury as an argument; it furnishes no support for judgment n. o. v. The record justifies the jury's conclusion that the death of the insured was accidental. The first assignment of error is overruled.

The second assignment of error which is based upon the refusal of the court below to give binding instructions is also overruled. The third assignment refers to the action of the court below in discharging the rule for a new trial, and we group it for discussion with the fourth assignment. The latter is based on the following excerpt from the charge of the court: "No witness has testified as to having seen this accident—or occurrence, we will say—so that it becomes a question for you as to whether this was accidental death or whether it was not. The law presumes that every person will act in a lawful manner. In a case of this kind, if this wound was self-inflicted, that would be a violation of law, that is, if Carmel D. Walters took his own life, he would be guilty of a crime. It is crime to take your own life, just as it is a crime to take the life of any other person. A person who attempts to take their own life, if they are of sound mind, that person is guilty of crime. The presumption would be that

he acted honestly first and lawfully, so as to that presumption the plaintiff in this case is entitled."

In the opinion of the Superior Court affirming the judgment of the court below, there appears this statement: "The court instructed the jury, in substance, that it was incumbent upon the plaintiff to prove that death was due to an accident, and in determining that question the plaintiff was entitled to the presumption that the insured did not take his own life; that if the jury was satisfied by the fair weight of the evidence that death was accidental, then the burden of producing the evidence that the fatal wound was intentional and self-inflicted would pass to the defendant. We think that was a correct statement of the law. The party alleging suicide must prove it, as the mere fact of death in an unknown manner creates no legal presumption of suicide."

The charge of the court below, as indicated by the excerpt cited, falls considerably short of the standard of due clarity. This charge was delivered before this court handed down its opinion in the case of Watkins v. Prudential Ins. Co., 315 Pa. 497, 173 A. 644, in which we laid down with particularity the rules as to the burden, measure, and nature of proof in cases of this kind. We there reversed the court below for instructing the jury that "this presumption [against suicide] has the same probative force and effect as direct evidence of accidental death," and for giving other further instructions to substantially the same effect. In that case we said: "The court erred in giving to the so-called 'presumption against suicide' the weight of a probative fact, thereby casting upon the defendant the burden of proving that the insured's death was something other than the kind of death insured against. Considerable confusion appears in judicial opinions as to the nature of presumptions and their function in the administration of justice. They are not evidence and should not be substituted for evidence. . . . It is true that there is a reasonable inference against death being self-inflicted, but this inference does

not have a sufficiently broad factual base to warrant its projection to the height of a presumption of law. Presumptions are not fact suppliers; they are guideposts indicating whence proof must come. . . . The so-called 'presumption against suicide' . . . is merely a permissible consideration of the nonprobability of death by suicide. In judicial trials, as in other affairs of life, probabilities are always being weighed by those who have to decide questions of fact, but probabilities are not legal presumptions." In that case we reached the following conclusions: "1. The operative facts of the insurance policy sued upon were 'external, violent and accidental means' causing the insured's death, and any evidence, whether direct or circumstantial, that tends to prove the operative facts, is admissible. 2. If there are in evidence credited facts or circumstances or both from which the jury may infer legitimately that the insured's death resulted from accidental means, plaintiff is entitled to recover. As to the test of submissibility of evidence to a jury, see Brown v. Schock, 77 Pa. 471, at 479. 3. On plaintiff rests the burden of proving all the operative facts by a fair preponderance of the evidence. An even balancing of the evidence on the issue of death by accidental means or death by suicide denotes that plaintiff fails to sustain her burden of proof and the verdict should be for the defendant."

We there also drew a distinction "between suits on insurance policies like the one here sued on, which insure against death as a result 'of bodily injuries effected solely through external, violent and accidental means' and suits on those policies *which insure against death but which contain a proviso avoiding the policy if the insured dies by his own act.*" As to the latter we said: "When in a suit on on a policy containing a proviso avoiding the policy if the insured dies by his own hand, plaintiff makes out a prima facie case, and defendant seeks to avail itself of the substantive defense reserved in the policy that the loss was due to a cause or risk *specifically excepted in the*

*policy,* the defense becomes an affirmative one and has the burden of proof."

While the charge in the case now before us contains sentences which if standing alone would constitute reversible error, we must consider the charge as a whole and when we do so, a reversal in this case is not required. This court has repeatedly held that "the general effect of the charge, rather than a casual expression in it, must govern the interpretation or construction of it": Kyle v. Southern Electric Light & Power Co., 174 Pa. 570, 579, 34 A. 323; Fitzpatrick v. Union Traction Co., 206 Pa. 335, 55 A. 1050. The general effect of this charge was not misleading. The jury understood that they could not return a verdict in favor of the plaintiff for the double indemnity claimed unless they were convinced "by the preponderance of credible testimony that the death of the insured resulted from bodily injury caused directly, exclusively and independently of all other causes, by external violence and purely accidental means," as the court instructed them in affirming defendant's first point. In its answer to the plaintiff's fifth request for instructions, the court below said: "The burden of proving accidental death in the first instance is on the plaintiff." The court below also affirmed the defendant's second point reading as follows: "Any legal presumption against suicide is of value only under circumstances leaving the cause of death in doubt, but in the case at bar the cause is known to be a gunshot wound from a gun in the possession of the insured, and the question for determination is whether the fatal shot was fired accidentally or by design."

In deciding not to reverse the judgment of the court below we are not sanctioning the use of the word "presumption" as it was used by the court in its charge or as used in the excerpt cited above from the opinion of the Superior Court. The trial judge should have made it clear that in weighing the evidence in this case the jury had a right to consider the nonprobability of death by

suicide but that this nonprobability could not take the place of the evidence required to be furnished by plaintiff in order to prove her case. In the case of Watkins v. Prudential Ins. Co., supra, we said that it was error for a trial judge in his charge to instruct the jury "to treat an ordinary permissible deduction as a compellable assumption, i. e., as a presumption putting on the person on whom it operates the burden of coming forward with opposing evidence, or suffering the penalty of having the so-called presumption accepted as verity." Wigmore on Evidence, 2d ed., volume 5, section 2491, says: "It is a fallacy to attribute (as do some judges) an artificial probative force to a presumption, increasing for the jury the weight of the facts, even when the opponent has come forward with *some* evidence to the contrary." ". . . No presumption can be evidence; it is a rule about the duty of producing evidence": Ibid., section 2511. Presumptions are always independent of evidence. Further, as to the distinction between "the burden of proof" and "the burden of producing evidence," see our opinion in Henes v. McGovern, Admr., 317 Pa. 302, 176 A. 503.

While the trial judge should have made it more clear that he was using the word "presumption" in the sense of a permissible consideration of the nonprobability of suicide, the entire charge does not support the contention that the trial judge instructed the jury that what he miscalled the "presumption that he [the deceased] acted honestly and lawfully" could be used by the plaintiff as a substitute either wholly or in part for the proof of the facts necessary to a recovery.

The judgment is affirmed.