Ruttenberg, Exr., Appellant, *v.* Fire Association of Philadelphia.

Ruttenberg, Exr., Appellant, *v.* Springfield Fire & Marine Insurance Company.

Ruttenberg, Exr., Appellant, *v.* Aetna Insurance Company.

Argued April 29, 1936.

Before Keller, P. J., Cunning-
ham, Baldrige, Stadtfeld, Parker, James and
Rhodes, JJ.

*John E. Evans, Sr.,* of *Margiotti, Pugliese, Evans &
Reid,* with him *W. R. Thompson,* for appellant.

*D. I. McAlister,* of *Hughes, McAlister & Zelt,* with
him *D. C. Jennings* and *T. H. Shannon,* for appellees.

Opinion by Rhodes, J., July 10, 1936:

Charles Ruttenberg had insured his building, store
stock and fixtures with fourteen different fire insurance

companies. On December 1, 1931, the building and its contents were destroyed by fire. He brought these three actions of assumpsit against three of the insurance companies involved to recover on the policies covering the building and personal property destroyed. The insured died after suit had been instituted, and his executor was substituted as plaintiff in each case. The three actions were tried together. The policies were of the standard form, and each contained the following clause: "This entire policy shall be void if the insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof; or in case of any fraud or false swearing by the insured, touching any matter relating to this insurance or the subject thereof, whether before or after a loss." The defense in each case was that the fire in question was caused by the fraudulent act or procurement of the insured for the purpose of defrauding the defendant insurance companies. The jury rendered a verdict for the defendant in each of the three cases. The trial court overruled plaintiff's motion for judgment n. o. v. and for new trial, and entered judgments for the defendants. Plaintiff appealed to this court.

The sole issue for the jury was whether the insured burned, or caused to be burned, the building and its contents in such manner as to void the policies.

The defense that the fire was caused directly or indirectly by the insured was an affirmative one, and the burden was therefore on the defendants to prove that the fire was set, or was caused to be set, by the insured. It was not necessary that the proof be beyond a reasonable doubt as is necessary when such a charge is made against a defendant in a criminal case. Proof of insured's fraudulent connection with the cause of the fire by a preponderance of the evidence was sufficient. Bobereski, Adm'r, v. Insurance Company of the State

of Pennsylvania, 105 Pa. Superior Ct. 585, 595, 161 A. 412, 415; Machnofsky v. Smith et al., 101 Pa. Superior Ct. 578; Floyd v. Paulton Coal Mining Co., 94 Pa. Superior Ct. 1, 6; Somerset County Mutual Fire Ins. Co. v. Usaw and wife, 112 Pa. 80, 90, 4 A. 355, 357; Catasauqua Mfg. Co. v. J. W. Hopkins et al., 141 Pa. 30, 46, 21 A. 638, 639; McMillen et al. v. Steele, 275 Pa. 584, 587, 119 A. 721, 722. Insured's fraudulent connection with the burning of his building and the contents thereof was to be proved like any other pertinent fact in a civil action. The result may impute a crime, but the judgment is not evidence that the insured is guilty of crime. See Somerset County Mutual Fire Ins. Co. v. Usaw and wife, supra.

There was no eyewitness in the instant case who saw the insured set fire to his building. The verdict therefore must be supported by circumstances in evidence from which the jury may infer legitimately that the insured burned, or caused to be burned, his store building and dwelling. See Watkins v. Prudential Ins. Co., 315 Pa. 497, 512, 173 A. 644, 651; Walters v. Western & Southern Life Ins. Co., 318 Pa. 382, 388, 178 A. 499, 501. Hence the vital question on this appeal is whether the evidence, viewed in a light most favorable to the defendants, is sufficient to sustain the conclusion of the jury that the insured set the fire, or that he caused it to be set. If the evidence fairly and reasonably justifies the verdict, it must be sustained.

The insured, Charles Ruttenberg, conducted a general store near the mining village of Nemacolin, Greene County, Pa. The first floor and basement of the building, a two-story frame structure 40 by 70 feet, were used for store purposes. The second floor was used for living quarters, where the insured and his family and some of his help resided. A few days before the fire, Mrs. Ruttenberg left, in their automobile, to visit two of her sons who were attending school in or near Wash-

ington, D. C. She took with her all of her best dresses and coats, her jewelry, some tablecloths, and silverware.

On the morning of November 30, 1931, the day before the fire occurred, the insured directed the maid to oil the floor of the store, and told her "not to be too stingy with the oil," and to use more of it around the butcher shop, which was in the rear of the main part of the store and partially above the furnace in the basement. For this purpose the insured gave her kerosene oil, although on previous occasions regular floor oil had been used. The oil was put on with a mop, and 10 gallons were used. On the same day, the insured ordered the maid to send out the month's laundry, and to send several suits and a topcoat to the cleaner. He also advised her to send out some of her own dresses. Just previous to the fire he told the maid to give about 8 quarts of wine to a certain salesman, as he would not have any further use for it. Trucks and automobile owned by the insured were not in the garage, attached to the rear of the store building, on the night of the fire. The newest and best truck had been sent to a garage in Carmichaels, a few miles distant.

The insured had been losing money for some time at the rate of about $65 a day, according to a statement he made to an employee. It was also evident that the stock of merchandise was somewhat depleted at the time of the fire. Most of the shoe boxes were empty; there was no gasoline on hand. Although the meat orders were usually made up and packed the evening before delivery, on November 30th the insured insisted that the butcher let them go until morning, and told him he could go home at 4 P. M. It appears that the insured was making very few purchases just prior to the fire. The maid, who also worked in the store, was instructed by the insured to tell salesmen who came to solicit orders that nothing was wanted. Nathan Silver, a witness called by the plaintiff in rebuttal, testified that

the insured purchased from him such items as tobacco, candy, gloves, cigars, cigarettes, and novelties; that purchases by the insured for the month of June, 1931, amounted to $527.04, for July, $337.31, for August, $280.78, for September, $309.33, for October, $134.08, and for November, $93.81. This witness also testified that the order given to him by the insured on Thursday previous to the fire amounted to only $3.77. Previous weekly purchases were greatly in excess of this nominal amount.

On the evening of November 30th, the insured asked the maid to come in early. The store was closed by the insured about nine o'clock, which was considerably earlier than the usual closing time. Immediately thereafter, the maid, Victoria Swetz, a nephew who was employed by the insured, and who lived in the apartment above the store, and the insured went upstairs to their respective rooms. About 12:55 A. M. the insured came to the maid's room and told her to get up, that there was smoke in the building, and that he did not know what was the matter. At this time the insured was wearing his underwear, with his nightshirt over it. He had on his glasses, and in his hand he had a pair of trousers and his coat. They reached the ground through an open window; and, from a neighbor's telephone, the maid called the fire company, which came within about ten minutes. By that time the entire building was in flames; it burned very rapidly and was a total loss. The flames when first seen came out of the basement entrance which adjoined the room in which the furnace was located.

After the insured went upstairs and after going to his bedroom, at the same time as the maid and the nephew went to theirs, he then went to the kitchen, which is on the same floor as the bedrooms. The maid, who testified to this fact, did not hear or see him re-

turn. Her next knowledge of his whereabouts was when he came to her room and called her. This witness, Victoria Swetz, also testified that the insured, after the fire, promised to pay her $400 for the loss of her clothing if she would not say anything to any one who questioned her concerning the fire.

The insured carried $31,500 of insurance on the stock and fixtures. Representatives of the insured and defendant insurance companies fixed the value at the time of the loss at $22,060.99. On the building there was $4,000 insurance, and the value fixed was $9,428.97.

With the evidence as stated, it is clear that there was a question to be submitted to the jury. Although the evidence was circumstantial, it was sufficient for the jury to have drawn the reasonable inference that the insured burned, or caused to be burned, his property, in order to defraud the defendant insurance companies. In Brown v. Schock, 77 Pa. 471, page 479, it was said: "In a question of circumstantial evidence, the proof derived from the circumstances is a question of natural presumption, and is to be found by the jury. The strength of this proof depends on the probability resulting from the facts. The presumption thus arising, being a natural one, is to be determined necessarily by the jury, and not by the court. It is the right of the party to have this submitted to the jury, unless it be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances. If in such a case as this we say that all the combined circumstances afford no evidence, we take from the party the right of trial by jury, a right of the utmost importance in a matter in which the natural instinct and judgment of men are the legal and constitutional right of a party." In Hill v. Central Accident Ins. Co., 209 Pa. 632, page 634, 59 A. 262, page 263, our Supreme Court held: "It is true we are more

often required to apply the rules of circumstantial evidence in criminal cases than in civil, but the only reason is that crimes are usually committed in secret, and hence it is difficult to obtain direct evidence. This is a rule laid down in Greenleaf on Evidence, 15th edition, sec. 13: 'In civil cases it is sufficient, if the evidence on the whole agrees with and supports the hypothesis which it is adduced to prove, but in criminal cases it must exclude every other hypothesis but that of the guilt of the party. In both cases the verdict may well be founded on circumstances alone, and these often lead to a conclusion more satisfactory than direct evidence.' "

The facts which were proved are significant, and afford the basis for the reasonable and legitimate inference that the owner of the insured building fraudulently burned it or caused it to be burned. The insured would financially benefit from the fire, as his business was decreasing and he was losing money each day. Customers were running large bills which they were unable to pay on account of economic conditions. The stock had been allowed to run down, and insured was not making purchases commensurate with the volume of his business. The stock and fixtures were well insured. Many personal belongings of the insured and of the members of his family had been removed from the premises. Automobile and trucks were not in the garage. The morning before the fire the floor of the store had been oiled with 10 gallons of kerosene oil. Although the oil was freely used, more was ordered to be placed around the butcher shop and over the place from which the first flames were seen to appear. The store was closed, the night before, an hour or more before the usual closing time. The maid was instructed to be in early, and one of the employees was told not to come around that evening to put up the next day's meat orders as had been the custom. After retiring to his room, the insured went out, and no one heard

or saw him return. About 12:55 A. M. he called the maid, at which time he was significantly prepared to leave the building. Although the fire company arrived within fifteen minutes from the time the insured advised the other occupants of the house of the fire, the building by that time was a mass of flames and beyond saving any part. The insured offered the maid $400 not to talk. We are of the opinion that by fair and reasonable inference, as distinguished from surmise or conjecture, the jury was warranted in finding that the insured fraudulently caused the fire.

Appellant's third assignment of error complains of the lower court's refusal to withdraw a juror and continue the case on account of alleged improper remarks of counsel for defendants in his argument to the jury. The remarks do not appear in the record, although we gather they referred to the failure of appellant to call members of insured's family. Objection was not made until the conclusion of counsel's argument, whereupon the trial court promptly instructed the jury to disregard the remarks of counsel outside the evidence, and refused appellant's motion. The withdrawal of a juror because of improper remarks of counsel is largely a matter for the trial court's discretion (Wilhelm v. Uttenweiler, 271 Pa. 451, 112 A. 94; Carroll v. Hannan, 289 Pa. 65, 137 A. 127), and we are not convinced that the court below abused its discretion in refusing to withdraw a juror in this case: Donahue v. Punxsutawney Borough, 298 Pa. 77, 148 A. 41. It does not appear that appellant was prejudiced by the remarks of counsel, although they may have been improper. The trial court acted as soon as the alleged improper remarks were called to his attention by appellant's counsel, who, however, raised no objection when the remarks were made, but apparently waited until the conclusion of the argument of counsel for the defendants. As we have held that there was ample evidence to sustain the verdict,

we do not deem the appellant's third assignment of error such as to warrant the granting of a new trial. Rock, Executor, v. Cauffiel, 271 Pa. 560, 115 A. 843. See, also, House v. Brant, 323 Pa. 53, 185 A. 628.

Appellant's fourth assignment of error is to the effect that the court below erred in admitting in evidence a portion of plaintiff's statement of claim offered for the purpose of attacking the credibility and competency of a witness for appellant. George R. Cole, a traveling salesman and a witness for appellant, testified that he had seen the stock a few days before the fire, and estimated the value thereof between $30,000 and $35,000. In surrebuttal the eighth paragraph of the plaintiff's statement of claim was offered and received in evidence, setting forth, in effect, that representatives of the insured and defendants met, and after due investigation and consideration, agreed for their respective principals that the total amount of damage and loss to the stock insured, after allowing depreciation, was $15,322.53. The plaintiff's statement was signed and sworn to by the insured. A new trial should not be granted for the reason assigned. The assignments of error are overruled.

Judgments are affirmed.