# Slattery *v.* Great Camp of the Knights of the Maccabees for Pennsylvania, Appellants.

*Insurance—Life insurance—Suicide—Case for jury.*

In an action upon a policy of life insurance under which the defendant was relieved from liability if the insured committed suicide, the case is for the jury where the evidence showed that the insured suffered with dizziness and with rushes of blood to the head; that on the day of his death, in his ordinary dress, he walked into a river until the water rose nearly to his shoulders; that he then turned and retraced his steps until the water reached only to his waist; that at this point he leaned or fell forward until his head was submerged; that after remaining in this ,position for a moment, he raised his head and called out; that again he moved towards the shore; that again he stooped or fell forward, his face becoming submerged until he was taken from the water in an unconscious condition; and that all efforts to resuscitate him were unsuccessful.

Argued Oct. 29, 1901.   Appeal, No. 143, Oct. T., 1901, by defendant, from judgment of C. P. McKean Co., Dec. T., 1898, No. 121, on verdict for plaintiff in case of Alice Slattery v. The Great Camp of the Knights of the Maccabees for Pennsylvania.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.

Assumpsit upon a policy of life insurance.   Before OLMSTEAD, P. J.

At the trial it appeared that the certificate upon which suit was brought contained a clause to the effect that the certificate should be void if the member holding it should commit suicide within one year after his admission to the order, whether sane or insane.   The defendant alleged that the insured committed suicide by drowning himself in the Ohio river.   The circumstances of the insured's death are described in detail in the opinion of the Superior Court.

The court refused to give binding instructions for defendant.

Verdict and judgment for plaintiff for $1,185.   Defendant appealed.

*Errors assigned* among others were (4) in refusing binding instructions for defendant.  (6) In refusing a motion for a new trial.

*R. B. Stone*, with him *James George*, for appellant.—The case was for the court: Cougle v. McKee, 151 Pa. 602; Gardner v. McLallen, 4 W. N. C. 435; Cunningham v. Smith, 70 Pa. 450; Sargeant v. National Life Ins. Co., 189 Pa. 346; Travellers' Ins. Co. v. McConkey, 127 U. S. 661; Bigelow v. Berkshire Life Ins. Co., 93 U. S. 286.

*Mullin & Mullin*, for appellee.—Suicide is a question of intention, and where no direct evidence exists, the question of intention is to be inferred from the circumstances and should be submitted to the jury: Shank v. United Brethren Mutual Aid Society, 84 Pa. 385.

OPINION BY WILLIAM W. PORTER, January 21, 1902:

The facts of this case are the same as those presented in the case of Slatterly v. Supreme Tent of the Knights of the Maccabees of the World (in which an opinion is filed herewith) with the exception that the testimony of the witness, which is alleged to have been discovered after the judgment in the first case, was presented to the jury in this case. The appellant in this appeal is the Great Camp of the Knights of the Maccabees for Pennsylvania. The first error urged upon us is, that the court erred in not granting a new trial. Nothing is exhibited which indicates any abuse of the discretion lodged in the trial court to determine the right to a new trial. The second error alleged is that the court failed to take from the jury the question of fact, namely, whether or not the insured committed suicide. To have warranted such action the testimony must have been susceptible of but one construction and free from all inferences upon which the plaintiff's claim might be sustained. Under the contract of insurance the defendant was relieved from liability if the insured committed suicide. It was shown that the insured in his ordinary dress walked into the Ohio river until the water rose nearly to his shoulders. He then turned and retraced his steps until the water reached only to his waist. At this point he leaned or fell forward until his head was submerged. After remaining in this position for a moment, he raised his head and called out. Again he moved towards the shore. Again he stooped or fell forward, his face becoming submerged until he was taken from the water by the

witnesses who found him in an unconscious condition, and who upon reaching the shore, seeing life in him, made efforts at resuscitation. These efforts were unsuccessful. The cause of death was not shown by professional testimony, but the proofs of death allege it to have been by drowning. No one knows the motive or purpose which led the insured to walk into the river, or to retrace his steps towards the shore, or whether the submersion of his head was due to intention to take his life or to physical conditions. It was shown that he had suffered at times with dizziness and with rushes of blood to the head. While his going into the water may have been with intention or purpose to take his life, yet the fact that he was returning to the shore would seem to rebut such intention or, at least, to indicate a change of such purpose. His falling face down into the water may have been intentional or it may have been due to dizziness or to a sudden physical seizure. It was not possible for the trial judge upon the facts presented, to say that the only and inevitable conclusion therefrom was that the insured had committed suicide. The inference of suicide was strong but the evidence was not conclusive. Suicide is a question of intention to be' inferred from circumstances where no direct evidence exists. To the jury then must the case have gone to determine this question: Shank v. United Brethren Mutual Aid Society, 84 Pa. 385. Criticism is made of portions of the charge, but we find nothing which leads us to remit the case for another trial.

The judgment is affirmed.