# Commonwealth *v.* DuBoise, Appellant.

*Criminal law—Murder—Evidence — Circumstantial evidence— Presumption—Weapon—Motive—Declarations—State of mind—Ill will.*

1. In a case of circumstantial evidence, the proof derived from the circumstances is a question of natural presumption, and is to be determined by the jury, and not by the court.

2. What the accused said, as much as the things he did, on the night of the crime, are circumstances in the case to be considered by the jury in determining his guilt or innocence.

3. Where the prisoner admitted that things he said on the night of the crime, were false, the jury is entitled to consider these false statements, and to draw from them the conclusion that his purpose in telling the untruths was to conceal the truth, and that his reason for the concealment of the truth, was that he knew, if told, it would injure him.

4. On a murder trial, a shotgun, ramrod and oily rags, and a shell loaded with number six shot, taken from defendant's overalls worn by him on the night of the crime, are properly admitted in evidence, where it appears deceased was shot by a gun loaded with number six shot, of the same bore as the shell, and the other evidence tends to show that the articles in question had been used by defendant in connection with the crime.

5. Threats uttered by defendant against deceased, his wife, are admissible, if made close in time before the crime—in this case from three to five months.

6. In such case the admission of the threats in evidence, is proper, not only as threats, but as declarations showing defendant's state of mind and his ill will towards his wife.

Argued January 3, 1921. Appeal, No. 199, Jan. T., 1921, by defendant, from judgment of O. & T. Wyoming Co., April T., 1920, No. 1, on verdict of murder of the first degree, in case of Commonwealth v. Joseph Du-Boise. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Indictment for murder. Before SEARLE, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Verdict, murder of the first degree, on which sentence of death was passed. Defendant appealed.

*Errors assigned* were various rulings on evidence and instructions, appearing by the opinion of the Supreme Court, one witness testifying to a threat to kill his wife made by defendant about July 4, 1919, and another to an offer of $500 to the witness sometime in May or June, 1919, if he (the witness) would kill defendant's wife.

*O. S. Kinner,* with him *Asa S. Keeler* and *James S. Fields,* for appellant.—Circumstantial evidence is not admissible unless shown to have some relevancy to the issue trying: Davenport v. Wright, 51 Pa. 292; Douglass v. Mitchell, 35 Pa. 440; Warren v. Com., 37 Pa. 45; Dodge v. Bache, 57 Pa. 421.

Testimony is not admissible which shows finding of articles a mile away from the scene of the murder where there is no evidence to connect them with the prisoner or the crime: Com. v. Johnson, 213 Pa. 607.

Evidence is not admissible to show that at some previous time the prisoner had expressed an intent to commit an act similar to that in question: Smith v. Com., 100 Pa. 321.

*E. B. Farr,* District Attorney, with him *H. S. Harding,* Assistant District Attorney, for appellee.—The gun was properly admitted in evidence: Com. v. Raddy, 184 Pa. 274.

OPINION BY MR. JUSTICE SCHAFFER, February 14, 1921:

Mary DuBoise, wife of appellant, was killed on the night of October 9, 1920, about 11:30 o'clock, while seated alongside a window in her home. At the time of the murder, her nine months' old baby was lying in a carriage at her feet. Her death was caused by a gunshot wound fired through the window from a gun loaded with number six shot, discharged at such close range that her flesh was burned.

The deceased and her husband, the appellant, had been separated for some time, and, in the preceding May, she had caused his arrest in nonsupport proceedings, which resulted in an order being made by the court of quarter sessions, directing him to pay her, for the support of herself and their four children, the sum of fifty dollars a month.

The estrangement between appellant and his wife grew out of his infatuation for a young girl, with whom his relations were illicit, who at the beginning of the intimacy was but thirteen years of age, and at the time of the murder only fifteen. He was fifteen years her senior. He had accomplished this child's seduction under promise of marriage; she, not knowing he was a married man, engaged herself to him. He gave her an engagement and a wedding ring and made other gifts to her.

Immediately following the killing, suspicion was directed toward the husband, and, as a result of tele-

phonic notice to the state police, who were stationed within a few miles of the scene of the crime, he was arrested about eight miles distant therefrom, shortly after one o'clock in the morning.

After a careful trial in the court below, in which every right of the defendant was safeguarded, he was convicted of murder of the first degree, on evidence which, though largely circumstantial, leaves no reasonable doubt in our minds as to his guilt.

When we bear in mind that defendant was separated from his wife, toward whom the testimony establishes he had feelings of strong ill will, with a desire in some way to get rid of her (expressed to several persons—to the girl with whom he was infatuated only a few days before the commission of the crime), that on a number of occasions he had made threats against deceased, that he was under an order of court to pay her a sum equal to one-half of his earnings, that he was infatuated with the young girl and desirous of marrying her, that he had been advised he had no legal ground for obtaining a divorce from his wife, and that she stood in the way of the accomplishment of his strongest desire, we have a motive for her murder as old as the history of crime.

The jury was warranted in finding the following facts: Defendant lived at a boarding house in Wilkes-Barre, in which the girl heretofore referred to was employed as a waitress; he endeavored to persuade her to visit a moving picture theatre in the vicinity and purchase two tickets, saying he would meet her there later the same night, on his return from taking some automobile supplies to his stepfather, who resided twenty miles away; the latter had no knowledge of this intended visit. Defendant did not want to accompany the girl, nor to permit anyone else to go with her, and so expressed himself. This device was a part of a plan for an alibi, to cover the felonious act DuBoise then had in mind to perpetrate during the time of the proposed visit to his stepfather's place. Defendant left the city in an automobile, bor-

rowed from a garage; he drove twenty miles on a rainy night to the house of his stepfather, reaching there about ten o'clock p. m. He left the place immediately thereafter, not later than 10:20; but, while there, obtained from a closet a twelve-gauge shotgun, which he had handled on a previous visit. He took the weapon and followed an unused private road—which was the shortest way to the place where his wife lived with her four children—two miles. In making this trip, defendant passed over wet grass and muddy ground, which showed evidences of the passage; reaching a place near the window where his wife was seated, he stood directly beneath it on a cellar door, and, from this spot, shot her in the back of the head, causing instant death.

An alarm was immediately given by the mother of the deceased, who was in the house, and the state police were acquainted with the facts of the murder. The husband was at once suspected, and the police started posses out to cover all near-by roads, with instructions to apprehend defendant. At 1:20 o'clock in the morning, he was stopped by one of the detachments of pursuers, at a place eight miles from the scene of the tragedy, and some ten miles from his stepfather's house. When the police searched him, they found a twelve-gauge shell, loaded with number six shot, in the pocket of his overalls. Immediately upon defendant's apprehension, before he was told the cause of his arrest, he exclaimed: "My God! has there anything happened to my poor wife?" The gun was found at the home of his stepfather, to which place it must have been returned by the defendant, with a ramrod and some greasy rags; it showed evidence of having been recently oiled and hastily cleaned—the rags were still wet with oil. No one, other than defendant, had used the gun for more than a week.

Defendant's statements, relative to the overalls and his movements, during the three hours intervening between the time he said he left his stepfather's house and his arrest, were inconsistent and contradictory; and the credi-

bility of his testimony was for the jury. We need not comment further thereon; but, broadly stated, it may be said that he gave no satisfactory explanation as to his whereabouts during the period of the commission of the crime.

The defendant's principal reason for sustaining his appeal is that he was convicted by circumstantial evidence. So long ago as Commonwealth v. Harman, 4 Pa. 269 (1846), we said, speaking through Chief Justice GIBSON: "Circumstantial evidence is, in the abstract, nearly, though perhaps not altogether, as strong as positive testimony; in the concrete it may be infinitely stronger," and this language was quoted with approval in Commonwealth v. Kovovic, 209 Pa. 465.

In Brown v. Schock, 77 Pa. 471, we said: "In a question of circumstantial evidence, the proof derived from the circumstances is a question of natural presumption, and is to be found by the jury. The strength of this proof depends on the probability resulting from the facts. The presumption thus arising, being a natural one, is to be determined necessarily by the jury, and not by the court. It is the right of the party to have this submitted to the jury, unless it be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances."

What the accused said, as much as the things he did, on the night of the crime, were circumstances in the case to be considered by the jury in determining the question of his guilt or innocence. If when he spoke he spoke falsely, as he admits he did, concerning certain of the incidents of that night, the jury was entitled to consider these false statements and to draw from them the conclusion that his purpose in telling the untruths was to conceal the truth, and that his reason for the concealment of the truth was that he knew, if told, it would injure him.

Certain of the assignments of error are directed against the admission in evidence of the shotgun, ram-

rod, oily rags and the loaded shell taken from defendant's overalls. These articles were all admissible against the defendant, their weight as evidence being for the jury. The loaded shell, taken from appellant's overalls, under the attending circumstances, coupled with his attempted explanation of its possession, was just as admissible as the declarations themselves, and this is equally true of anything else which he said or with which he was connected on the night of the murder, between the time when he left his stepfather's house and his arrest. The shotgun, ramrod and oily rags were also admissible, it appearing in the case that defendant, but a few days before, had seen and handled this gun at his stepfather's house, and that, on the night of the shooting, he was in the kitchen where the gun stood, it being manifest that he could easily have procured the weapon, and, after the murder, returned it to the place from which he obtained it, first cleaning and oiling it, to destroy the evidences of recent use. The gun was of the same bore as the shell which was found in defendant's pocket, and the shot in the dead woman's body had a similar number to that in the shell. The fact that the gun had been recently cleaned, as evidenced by its oily condition, and the condition of the ramrod and the rags, was proper for the consideration of the jury on the like grounds that made the gun itself evidence.

The threats uttered by the accused were also admissible, they being sufficiently close in time to the crime. The receiving of the threats in evidence was proper, not only as threats, but as declarations showing the defendant's state of mind, and his ill will toward his wife.

We have carefully examined the excerpts from the charge, covered by other assignments, and find nothing in them which constitutes reversible error. After a most careful reading of the entire record, we are of the opinion that appellant's conviction was fully justified by the evidence.

The assignments of error are all overruled, the judgment is affirmed and it is directed that the record be remitted to the court below for the purpose of execution.