## Berlin *v.* Crawford, Appellant.

*Workmen's compensation—Injuries in course of employment—Evidence—Sufficiency.*

An operator of an oil well, employed continuously for twenty-four hours a day to superintend the operations of the pump, and detect breakdowns, etc., is entitled to compensation for injuries received from the accidental discharge of a pistol, while on the premises of his employer.

The provision of Section 301 of Article III of the Workmen's Compensation Act is broad enough to include every injury received on the premises of the employer during the hours of employment, so long as the nature of the employment demands the employee's presence there, regardless of whether his presence at the particular place where the injury occurred is actually required, if there is nothing to prove a virtual abandonment of the course of his employment by the injured person, or that, at the time of the accident, he was engaged in something wholly foreign thereto.

When, on an appeal from an award of the Workmen's Compensation Board, the Court did not disturb the findings of fact, but reversed the decision of the Board on a question of law, there is no requirement to refer the record back for further findings.

Argued April 22, 1925. Appeal No. 161, April T., 1925, by defendant, from judgment of C. P. Butler County, December T., 1924, No. 62, in the case of Jennie M. Berlin v. Harry Crawford and T. B. Gregory, Partners as President Oil Co., and Fidelity Casualty Company, the Insurance Carrier. Before HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Appeal from decision of Workmen's Compensation Board. Before HENNINGER, P. J.

The facts are stated in the opinion of the Superior Court.

The Court reversed the decision of the Board and entered judgment in favor of the plaintiff in the sum of $2500.00. Defendant appealed.

*Error assigned* among others was the decree of the Court.

*Scott D. Ferguson,* and with him *John C. Sheriff,* for appellant.—The Court cannot reverse without ordering a rehearing: Act of June 26, 1919, P. L. 642, 666; Gurski v. Susquehanna Coal Co., 262 Pa. 1; McCauley v. Imperial Woolen Co., 261 Pa. 312.

The injury to the employee was not compensable: Provident Life & Trust Co. v. Klemmer, 257 Pa. 91,

101; Commonwealth v. Wilkes-Barre, 258 Pa. 130, 136; Malky v. Kiskiminetas Valley Coal Co., 278 Pa. 552; Callihan v. Montgomery, 272 Pa. 56; Dzikowska v. Superior Steel Co., 259 Pa. 578.

*Zeno F. Henninger,* for appellee, cited: Houlehan v. Pullman Company, 280 Pa. 402; Poffinberger v. Martin Co., 83 Superior Court 524; Maguire v. James Lees and Sons Co., 273 Pa. 85.

OPINION BY GAWTHROP, J., July 9, 1925:

Plaintiff filed a petition under the Workmen's Compensation Law of June 2, 1915, P. L. 736, for an award in her favor because of the death of her husband while an employee of Crawford and Gregory, trading as President Oil Company. The referee, to whom the case was referred, found as a fact that decedent was not injured in the course of his employment and dismissed the petition on that ground. The ruling was affirmed by the Workmen's Compensation Board. On appeal to the court of common pleas, the referee and the board were reversed and judgment was entered for plaintiff; whereupon, the defendant company and its insurance carrier brought this appeal. Payment is resisted because, as alleged, the accident did not occur in the course of deceased's employment and, therefore, was not within the terms of the act.

The basic facts are not disputed. They are as follows: Claimant's husband, Clyde T. Berlin, was accidentally killed June 13, 1923; at the time he received the injury resulting in his death he was employed by the defendant; his employment was by the month at the monthly wage of $115; defendant was engaged in the production of oil and manufacture of gasoline; the oil was produced and gasoline manufactured on a certain lease of considerable acreage, with twenty-three producing wells and one gasoline plant and the operator's (commonly called pumper) dwelling house thereon; the oil wells and gasoline plant were operated by

gas engines and the operation of both wells and plant
was continuous during the entire day and night; the
operator's presence was required on the lease, either
in the house or outdoors, for the entire twenty-four
hours of each day; the engines were operated by gas
power and were equipped with a device known as a
barker, which made a continuous noise that could be
heard from all parts of the lease; from that noise the
operator could determine whether or not the engines
were running properly and were doing the work that
they were required to do and could detect if any
well was not operating, or, in ordinary language, broke
down; Berlin was employed to operate and was operat-
ing this lease, the wells and the gasoline plant when
he received the injury that resulted in his death; he
was the sole employee and had full charge of both wells
and plant; his contract of employment required him to
be on the lease, either in the dwelling house or out-
doors, day and night, within the hearing of the bark-
ing of the gas engines; his work consisted in the car-
ing for and guarding of his employer's property, in
listening for trouble in the machinery or equipment of
the wells and gasoline plant, oiling the machinery when
necessary and making repairs to machinery or equip-
ment as required; his injuries were inflicted by the
accidental discharge of a revolver in the kitchen of his
home about six o'clock P. M.

The question arises whether the ultimate conclusion
that decedent was not killed in the course of his em-
ployment can be fairly inferred from the basic facts.
The question is one of law reviewable by the courts
(Stahl v. Watson Coal Co., 268 Pa. 452, 454; Callihan
v. Montgomery, 272 Pa. 56, 62; Houlehan v. Pullman
Co., 280 Pa. 402, 406), and here is properly answered in
the negative. The only inference which can fairly be
drawn from the undisputed and underlying facts is
that Berlin was injured in the course of his employ-
ment. He received his injuries on the premises of the

employer during the hours of his employment, while it required his presence there. There was no evidence of abandonment of the course of his employment, nor that he was engaged in something foreign thereto.

"The provision (of the Act of June 2, 1915, P. L. 736, article III, section 301) is broad enough to include every injury received on the premises of the employer, during the hours of employment, so long as the nature of the employment demands the employee's presence there, regardless of whether his presence at the particular place where the injury occurred is actually required, if there is nothing to prove a virtual abandonment of the course of his employment by the injured person, or that, at the time of the accident he was engaged in something wholly foreign thereto," (Malky v. Kiskiminetas Valley Coal Co., 278 Pa. 552, 554; Callihan v. Montgomery, supra), except where the injury, "is intentionally self-inflicted" or "caused by an act of a third person intended to injure the employee because of reasons personal to him."

The present case is somewhat like Malky v. Kiskiminetas Valley Coal Co., supra. There a coal mining company brought workmen to its mines to take the place of strikers, lodged them in a bunk house on the premises and furnished them with food so that their presence for their work at the mines could be continuously maintained without an attack or solicitation by the strikers. One of the workmen was killed during the night at his lodgings by a bomb thrown through a window of the bunk house. In that case the referee found that the miners were free to go to adjacent towns to live. Compensation was allowed, the Supreme Court holding that it was a fair inference from the evidence that the presence of Malky was in furtherance of the needs of his master. The question before the appellate court there was whether the board was justified in holding that the deceased was in the

course of his employment when killed. The question of law whether that was the only inference to be drawn from the facts was not presented.

Appellant urges that the court below sustained exceptions to a finding of fact and reversed the action of the board founded thereon, and that section 427, of article IV, of the Act of June 26, 1919, P. L. 642, 660, requires that "if such court (of common pleas) shall sustain the appellant's exceptions to a finding or findings of fact and reverse the action of the board founded thereon, the court shall remit the record to the board for further hearing and determination." The answer to this argument is that the reversal was upon a question of law. It was stated in Riley v. Carnegie Steel Co., 276 Pa. 82, 87, that the provision of the Compensation Act of 1919, quoted, is intended to afford the claimant a full opportunity to prove every fact favorable to the claim. Clearly the provision has no application when the reversal is on the ground of an erroneous conclusion of law by the board, and the learned court below did not fall into error when he stated that he was not disturbing the facts, but was holding the conclusions of law erroneous.

The judgment is affirmed.