Floyd *v.* Paulton Coal Mining Company, Appellant.

Argued April 12, 1928. Be-
fore PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN,
GAWTHROP and CUNNINGHAM, JJ.

2

*Frank K. Willmann,* for appellant, cited: Dinger v. Friedman, 279 Pa. 8; Commonwealth v. Fragassa, 278 Pa. 1; Buck v. Quaker City Cab Co., 75 Pa. Superior Ct. 443; Walcofski v. Lehigh Valley Coal Co., 278 Pa. 84; Jones v. American Caramel Co., 225 Pa. 644; McMillen v. Steele, 275 Pa. 584.

*Clarence O. Morris,* for appellee, cited: Breiden v. Paff, 12 S. & R. 430; Hazleton Coal Company v. Mergergal, 4 Pa. 324; Senser v. Bowers, 1 P. & W. 450; Wile's Estate, 6 Pa. Superior Ct. 435; Picken's Estate, 163 Pa. 14; McCausland's Estate, 213 Pa. 189; Stahl v. Watson Coal Company, 268 Pa. 452.

OPINION BY KELLER, J., July 12, 1928:

This is a Workmen's Compensation case. Claimant's husband, Harry Floyd, was fire boss in defendant's mine. He was killed by an explosion while examining the mine for gas early in the morning before the miners entered for the day's work. The only question is whether the explosion resulted from Floyd's violation of the Act of Assembly of June 9, 1911, P. L. 756, as amended by the Act of June 1, 1915, P. L. 716, which provides that in making the examination the fire boss shall use no light other than that enclosed in an improved safety lamp, and that any fire boss who neglects to comply with such provision shall be guilty of a misdemeanor. If the explosion resulted from his use of an open light, the claimant is not entitled to recover: Walcofski v. L. V. Coal Co., 278 Pa. 84; Pokis v. Buck Run Coal Co., 286 Pa.

52; Shoffler v. L. V. Coal Co., 290 Pa. 480; if it did not, she is.

The act makes it the duty of the fire boss to examine carefully within three hours before each shift enters the mine, "every working place, without exception, all places adjacent to live workings, every roadway, and every unfenced road to abandoned workings," for the purpose of discovering the presence of explosive gas, or other existing danger; and the provision that he shall use no light other than that enclosed in an improved safety lamp is manifestly for his own protection, that of his fellow employes, and of the mine itself.

The referee found,—and the evidence supports the finding—"that at 2:55 o'clock A. M. on the morning of June 1, 1926, the decedent, who was a mine fire boss, went into the mine of the defendant company with an open [lighted] lamp on his head, which is a violation of the mine code." The open lamp on his cap was a carbide lamp, the flame of which is not enclosed in an improved safety lamp. It is used by miners after the examination of the fire boss has shown that there is no gas in the mine. He also carried in his hand an improved safety lamp and a small 'shovel cane.' The explosion occurred nearly three hours later. No sound was heard, but some smoke coming out of the mouth of the mine revealed that there was trouble. On entering the mine Floyd's body was found at the entry into 19 butt about a mile from the mouth of the mine, his face and neck and hands—every part of his body not covered by clothing—burned, and his clothing scorched. Several days later both lamps, his cane and the chalk used by him for marking the places examined, (See Art. V, Sec. 1, of Act of 1911) were found lying a few feet apart in 19 butt close to the face of the working and about 46 feet away from his body. Neither of the lamps was then burning, but the water feed to the

open carbide lamp was turned on, in the position it would have to be if the lamp had been burning. All of the witnesses who testified on the subject gave it as their opinion that the explosion had occurred in 19 butt; the walls there were hot and charred and showed more heat than in the main entry where the force of the explosion was also felt. The electric locomotive which Floyd used to travel in the main entry was 400 feet distant from his body and nearer the mouth of the mine, and while the force of the explosion had damaged the sheet iron covers of the motor, the other indicia of an explosion originating at that point were missing.

There was evidence that an explosion could be caused by an electric spark from the motor; by the striking of a tool on the uninsulated wire which furnished electricity to the motor; by the fall of slate or rock from the roof of the mine on the wire; or by a break or defect in the safety lamp. But there is no evidence to support a finding that any of these things occurred or was the cause responsible for this explosion. The electric locomotive was 400 feet away from Floyd's body and 19 butt, and the condition of the surroundings there negatived the explosion originating at that point. Had the gas ignited from a spark from the motor while he was operating the locomotive he would have been blown towards the mouth of the mine, not away from it. The only tool Floyd carried (the shovel cane) was found inside 19 butt quite a distance from the main entry, and close to the lamps and chalk, and the wire does not extend into the butt. No cave-in or fall of slate or rock was found anywhere along the line of the wire. An examination of the safety lamp showed it was not broken or defective. On the other hand, if Floyd, who started in the roadway from the mouth of the mine with a lighted carbide lamp, in violation of the law, continued its use in 19 butt the explosion is easily accounted for. The ex-

pert witnesses who testified on the subject gave it as their opinion that the explosion was caused by the lighted carbide lamp in 19 butt; that Floyd dropped the lamps, etc., there and staggered to the entry where he fell and died. The lack of bruises on his body negatived his having been blown 400 feet from the locomotive and so did the position of the lamps, chalk and cane. The referee must find the facts from the evidence. They may not rest on conjecture. There were facts in evidence from which it might be inferred that the lighted open carbide lamp which Floyd was using when he entered the mine caused the explosion. To ascribe the explosion to any other cause required the happening of certain events in combination of which there was not only no evidence in the case, but to the occurrence of which the evidence in the case was definitely opposed. The referee did not find that the explosion did result from some other source than the lighted carbide lamp; he only found that it "may have originated from other sources"; but in the light of the evidence in the case, there is nothing but conjecture on which to base such a finding; and it may therefore be reviewed here: Stahl v. Watson Coal Co., 268 Pa. 452.

The board felt obliged to sustain the referee's finding on the ground that Floyd's commission of a misdemeanor at the time of the accident, viz., the use of a lighted carbide lamp causing the explosion, had to be proved beyond a reasonable doubt. This was a mistake of law. No such burden rested on the defendant. The burden of proving one guilty of a crime or misdemeanor beyond a reasonable doubt is confined to the criminal courts, where the accused's responsibility to the Commonwealth is involved. It does not apply to civil issues growing out of the same circumstances: McMillen v. Steele, 275 Pa. 584, 586; 5 Wigmore on Evidence, 2nd Ed., Sec. 2498—2 (1) pp. 470, 472; 1 Greenleaf on Evidence, Sec. 13; 1 Jones on Evidence,

2nd E'd., Sec. 16. Thus one charged with wilfully setting his house on fire with intent to secure the insurance money to the prejudice of the insurer, cannot be convicted of the offense unless the jury are convinced of his guilt beyond a reasonable doubt; but in defending a suit on the insurance policy the insurance company need only satisfy the jury by a preponderance of the evidence that he wilfully burned the building: Schmidt v. Ins. Co., 1 Gray (Mass.) 529; Kane v. Ins. Co., 10 Vroom (39 N. J. L.) 697; Blaeser v. Ins. Co., 37 Wis. 31. So, no one can be convicted of a violation of the laws regulating child labor and protecting children at work unless the jury find him guilty beyond a reasonable doubt, but his civil responsibility is measured by the preponderance of the evidence: Stehle v. Jaeger Automatic Machine Co., 225 Pa. 348, 351.

We are not satisfied that the evidence would not be sufficient to sustain a conviction in the criminal courts. It is as strong as that on which we sustained a conviction of involuntary manslaughter, arising from the explosion of an alleged still, in Com. v. Ernesto et al., Pa. Superior Ct. , (379, 390, 391, October T., 1927); but that is not the question here involved. It was sufficient to sustain a finding that the explosion was caused by the lighted carbide lamp which Floyd was carrying, in violation of law, when he entered the mine. See, on the subject of Circumstantial Evidence, Chief Justice Agnew's lucid statment in Brown v. Schock, 77 Pa. 471, 478, 479; Com. v. DuBoise, 269 Pa. 169, 174. Any other finding, under the evidence now in the case, would have to rest on the conjecture that some combination of circumstances, of which there is no evidence present of their combining, happened or occurred to cause the explosion in place of the obvious explanation ready at hand.

It may be that further light may have been shed on the accident since the hearing. In reversing the judg-

ment, therefore, we shall not enter judgment for the defendant but refer the case back to the board for further hearing and determination in the light of this opinion.

The judgment is reversed and the record is directed to be remitted to the Workmen's Compensation Board for further hearing and determination.