Puza *v.* P. & R. C. and I. Co., Appellant.

Argued December 10, 1929.

Before PORTER, P. J., TREXLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*George Ellis,* and with him *B. D. Troutman* and *Jno. F. Whalen,* for appellant.

*Roger J. Dever,* for appellee.

OPINION BY CUNNINGHAM, J., January 29, 1930:

On April 19, 1928, claimant, while in the employ of defendant as a contract miner at its Kohinoor colliery, suffered serious burns on his face and hands as the result of an explosion of gas. After a hearing on his petition, the referee awarded him compensation in the sum of $250; the board adopted the findings of the referee and affirmed the award. Upon appeal to the court of common pleas of Schuylkill County, which heard the case in banc, defendant's exceptions were dismissed and judgment entered upon the award, and we now have this appeal from that judgment. The amount of the award is not in controversy if claimant is entitled to compensation. The disputed question is one of fact—the cause of the explosion.

Claimant asserted that he and his "buddy," after authorization from the fire-boss to go to work, were driving a rock hole and that during the temporary absence of his buddy claimant's pick struck a sulphur ball, generating a spark which fired the gas. Defendant contended that the claimant had taken himself out of the course of his employment by violating rules Nos. 9, 10 and 25 of Article XII of the Anthracite Mine Law of June 2, 1891, P. L. 176 (requiring the use of locked safety lamps and prohibiting the carrying of matches in any part of a mine where gas is likely to accumulate, etc.), and that the explosion was caused by the striking of a match by claimant to light the fuse of a "plug"—a short hole partly blown out. The portion of the third finding of the referee to which exceptions were taken by defendant reads: "At the moment the claimant sustained the accidental injuries he was dressing off the face of a breast with a pick at

his working place in the before-mentioned mine when the pick struck a sulphur ball and a spark developed which ignited gas which was present and in the explosion that followed the claimant was burned about the hands, arms, face and chest.''

Claimant testified that he held a miner's certificate, had frequently worked during his twenty-three years' experience in places where there was gas, knew he was not allowed to take matches where he was working when injured and that he was using a battery and a safety lamp. His account of the explosion reads: ''Q. How did it light? A. Took pick to dress up face and hit with pick sulphur ball and make spark and then that fired. That was the first time I hit that. Q. You lit the gas yourself with a pick? A. Yes. Q. What kind of light did you have? A. Battery. Q. Strike match? A. No. Q. Smoke in there? A. No, sir; no smoke in mines.''

On cross-examination he testified: ''Q. What kind of lights did you use in that mine at Kohinoor? A. Electric lights. Q. A safety lamp? A. Yes. Q. Any open lights? A. No. Q. Not allowed to take any matches there? A. No. ...... Q. You know it is against the law to take an open light in a place where gas is likely to be found? A. Yes. Q. You took a match in there, didn't you? A. No. Q. Didn't you strike a match to light a fuse? A. That pick. Q. Didn't you take a match in there and strike a match to light the fuse, and instead of lighting the fuse it lit the gas? A. Never. ...... Q. Didn't you tell Mr. Evans, the boss, and Mr. Laudeman when he was dressing you that you struck a match to light the fuse? A. No. ...... I do not know myself what happened. ...... I told I did not know myself what happened. ...... Q. Now you think the pick did it? A. Yes.'' The evidence relied upon by defendant was that of William Evans, inside foreman, who testified to the

following conversation with claimant shortly after the accident: "Q. Did you have a talk with him in the hospital? A. Yes, sir; when I came there; they sent for me and told me a man was burned and they had him there at the time and I asked him what happened and he said he was firing a plug. I said, 'How did you light the fuse;' he said, 'Lighting a match;' I asked him, 'Where is the safety lamp;' he said, 'On the gangway.' Q. Did you ask him if he examined for gas? A. Yes, and he said he didn't examine, because he left it on the gangway. ...... Q. Did he say anything to you about spark from pick, striking a sulphur ball, being responsible for this explosion? A. No, sir.'' Another employe who was dressing claimant's injuries corroborated the testimony of the foreman relative to this conversation. Subsequent testimony of the foreman concerning the result of his examination of the locality of the explosion tended to corroborate claimant's version of the accident. This testimony reads: "Q. Did you visit this place after the explosion? A. Yes, sir. Q. Any holes tamped there? A. No, sir. Q. Any occasion to light a fuse? A. No, sir. ...... Q. Know whether a shot had been fired there? A. I examined the place after and there was no shot fired there.''

Upon this appeal it is not our province to weigh the evidence submitted to the referee and reviewed by the board. Our only inquiry is whether there was evidence competent in law to support the finding and whether on such finding the law has been properly applied: Kuca v. Lehigh Valley Coal Co., 268 Pa. 163; Vorbnoff v. Mesta Machine Co. et al., 286 Pa. 199. Under the defense advanced in this case, the employer assumed the burden of showing the alleged violation of the mining law, not beyond a reasonable doubt as in a criminal case: Floyd v. Paulton Coal Mining Co., 94 Pa. Superior Ct. 1, and Labuck v. Mill Creek Coal

Co., 292 Pa. 284, but, in the language of the Supreme Court in the case last cited, "the evidence to refute the claim should at least approximate that required in criminal cases." It was for the referee and the board to weigh and consider the testimony relative to the alleged violation of the rules: Labuck v. Mill Creek Coal Co., supra; Krischunas v. Phila. and Reading Coal and Iron Co., 296 Pa. 216. As pointed out by the learned president judge of the court below, claimant's testimony, if believed by the compensation authorities, was competent in law to sustain the award; his story was not incredible. The duty of passing upon his credibility, as affected by the evidence relative to his contradictory statement after the accident, was for the referee and the board. All the proofs and the inferences to be drawn therefrom and the reconciliation, where possible, of conflicting testimony were matters for their consideration and the court below committed no error in declining, under all the evidence, to disturb their finding that the mining laws had not been violated by claimant: Johnston v. Payne-Yost Const. Co. et al., 292 Pa. 509.

The conclusion of that court was thus expressed: "But it is not for us to say whom the referee or the board must believe, when the testimony before them is competent. And, as all of the testimony is competent, we are obliged to affirm the findings therefrom as determined by the referee and permitted by the board to stand." This was a correct statement of the scope of the review to which defendant was entitled in the court below. As we are also convinced from a review of the record that there was competent evidence to support the award in this case, the assignments of error must be overruled.

Judgment affirmed.