Price et ux. *v.* Glen Alden Coal Co., Appellant.

261

Argued October 22, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUN-
NINGHAM and BALDRIGE, JJ.

*J. H. Oliver,* and with him *Franklin B. Gelder,* for
appellant.

*E. C. Marianelli,* for appellees.

Opinion by Linn, J., December 12, 1930:

Appellant states its contention as follows:

"Our sole ...... ground for appeal is that the decedent, Price, was violating Article 12, Rule 16, and Article 17, Section 4, of the Anthracite Mine Law (Act of June 2, 1891, P. L. 176), which are as follows: Rule 16. No person shall ride upon or against any loaded car, cage, or gun-boat in any shaft, slope or plane in or about a mine or colliery. Section 4. All offenses under this act are declared to be misdemeanors ...... our contention is that Price, when overtaken by death, was riding up the slope and was thus committing a misdemeanor, which took him out of the course of his employment."

In the report of the board it is said: "The established facts show that the decedent was regularly employed as the headman on a slope, but on June 5, 1928, he had been assigned by the section foreman to work as footman for the day. He left his dinner pail at the head of the slope and went to the foot of the slope to perform the duties to which he was temporarily assigned. Coal was hoisted up this slope three cars at a time, and the signal to the engineer to hoist was given by one bell. If there were more than three cars at the foot of the slope the first bell was immediately followed by two bells, which was the signal for the engineer to stop the engine in order to permit the footman to uncouple the three cars from the other cars at the foot of the plane. There was generally a lull in the operation near noon and it was customary for the men to eat their lunch during this lull. About 10:45 A. M., on June 5, 1928, the engineer on the slope was signalled by the decedent to hoist the fifth trip of loaded cars for that morning. This signal was not followed by another signal which indicated that it was the last trip before lunch. The engineer had pulled the trip about halfway up the slope when the haulage

rope began jerking, indicating that one of the cars on the slope was off the track. The engineer stopped the motor and went down the slope to investigate. He found the dead body of the footman lying across the slope tracks immediately in front of the forward wheels of the second loaded car.''

The referee found that the death of Price ''was caused by ...... accident in the course of his employment'' within the statute. Both the board and the common pleas affirmed.

In determining whether the contention of the claimants or of appellant should prevail, we apply the rule thus stated in Stahl v. Watson Coal Co., 268 Pa. 452: ''If the vital point in dispute is claimed to have been established by direct proof, the question whether or not there is evidence to sustain it, is one of law and may be reviewed; but, if such evidence appears, the finding becomes one of fact and is not the subject of review, though the referee and board might well have decided the point differently, and the court would possibly have done so. In the present case the ultimate fact as to whether or not decedent was injured in the course of his employment, as defined by the act, is not claimed to be possible of establishment by direct evidence, and hence this may be dismissed from further consideration. Where, as here, this vital point is sought to be inferred from certain basic or underlying facts, which are said to have been proved, the question whether or not there is evidence to support them is one of law and may be reviewed; but, if such evidence appears, the finding is one of fact and is not the subject of review.''

As the ''vital point,'' in this case—death in the course of employment—was not established by direct, as distinguished from circumstantial evidence, but was inferred from other facts said to have been proved, we examine the record to see whether support-

ing evidence appears; if we find such evidence, we must accept the facts found, even though we might have reached a different conclusion if the duty of finding the facts had been ours. The referee found that the slope was 600 feet long. The engineer could not recall whether Price had eaten his lunch, which, earlier in the day, he had left at the head of the slope. This engineer had given explicit warning against riding the "trips" and stated that Price never did it. The rails were 2 feet 11½ inches apart, on ties 5 or 6 feet long; the space between ties was filled up "approximately to the level of the ties." The record contains a sketch or diagram showing the location of the rails, cars timbers, etc., at the place where decedent's body was found. There would seem to have been sufficient space on either side of the cars for one to walk up or down the slope. After the accident, there was "evidence of something having been dragged" on or along the track for a distance of 25 feet below the car that remained on the rails; for a distance beyond that space of 25 feet, there was no such indication, but the investigation was not continued to the foot of the slope, so that we are without evidence of the condition of premises in that region. The part of the mine-works immediately involved, was the slope from top to bottom; Price had to get down and up; he had been safe at the bottom; he was found dead about mid-way between top and bottom. In considering what inference may be made from the directly established facts, it is helpful to inquire what conduct immediately before the accident, might now be considered as then natural and probable? What is likely to have occurred? Claimants, in that attitude, ask those questions. And, in answer, they may properly say that Price may have started to walk up the slope, after giving the signal to hoist the cars, under the impression that he had sufficient time to do so before the cars

would be drawn up, and that the time proved too short; or that he walked up alongside the tracks and that the space at that point proved too narrow; there is no evidence that the hoisting immediately followed the signal. Claimants also say that Price may have been caught with the cars as they started up from the foot of the slope and that he was shaken loose when part way up. It was improbable—so claimants reply to appellant's contention—that he, who had never before ridden a loaded trip, who had been warned against doing so, would not only disobey his orders, but by doing so would commit a misdemeanor that might result in his imprisonment. Moreover, say the claimants, the rule of law permitting such an inference requires a preponderance of the evidence to justify it, and that is wholly lacking. In support of claimant's reasoning from the directly established and undisputed facts, we are referred to several decisions. In Flucker's case, 263 Pa. 113, it appeared that his body was found in a ravine below a foot bridge over which he used to travel in the course of his employment. What caused his death at that place? The referee found as a fact that he "left his home to go back to his place of work." The opinion states that the facts found justified the inference that "considering the hour of departure from his residence, he must have reached defendant's plant in ample time to resume his usual occupation during his regular working hours," though nobody saw him there. If, now, in such circumstances, the presence of his body in the ravine below the foot-bridge over which he was required occasionally to pass in the performance of his duty, was sufficient to justify the inference by the compensation authorities (the common pleas did not think the evidence warranted the inference and was reversed on appeal) we are not authorized by the law to say that the presence of Price's body on

the slope, up and down which he must have travelled in the course of his employment, with the other facts, as stated in this opinion, is insufficient to support the inference of death in the course of employment, after the compensation authorities have made that inference. In Granville v. Scranton Coal Co., 76 Pa. Superior Ct. 335, it appeared that Granville's body was found at a place where he had no duties to perform, but to which he went during the luncheon intermission. "It was not shown what Granville was doing when he fell into the gears or how the accident happened," nor was there "testimony that he was doing something wholly foreign to his employment at the time." This court held that the finding of the compensation authorities was supported by evidence and that the common pleas was not authorized to hold that the inference made was not justified by the facts found.

On the other hand, there was direct evidence in Walcofski v. Lehigh Valley Coal Co., 278 Pa. 84, and in Pokis v. Coal Co., 286 Pa. 52 and in Shoffler v. Coal Co., 290 Pa. 480 that the employees violated the law, and in Kuca v. Lehigh Valley Coal Co., 268 Pa. 163, that he had severed the course of his employment by going where he had no right to go.

Each side contends that Floyd v. Paulton Coal Mining Co., 94 Pa. Superior Ct. 1 supports its argument. In the case at bar, the last certain knowledge we have of Price is the evidence of the engineer that he received the signal of one bell to hoist. That was an act clearly in the course of Price's employment. In Floyd's case the last certain knowledge we had of him —a fire-boss employed to examine the mine three hours before the shift enters, to discover the presence if any, of explosive gas—was that he entered the mine with an open lighted lamp, in violation of the mine code, instead of using an improved safety lamp; that, of

course, was direct proof; while in the mine, an explosion occurred and he was killed; near him was found his lamp with the water-feed open as it would have been if the lamp had continued burning as it was when he entered the mine. We were of opinion that, having shown the violation of law when he entered the mine, followed by an explosion that would naturally and probably follow taking the open lamp into gas-charged areas, with the lamp in the condition described when found after the explosion, a justifiable inference was that that open lamp caused the explosion. We could not lay aside such a probable result and approve the possible conjecture that the explosion may have been caused by a spark from an electric motor, or by striking a tool on uninsulated wire, or by the fall of slate or rock, or by the break or defect in a safety lamp, because such conjectures were eliminated by the admitted fact that Floyd entered the mine in violation of law with an open lamp that would explain exactly what occurred. The reasoning which supports the conclusion reached in Floyd's case makes directly against appellant's argument in this case. The undisputed facts existing prior to the death of Price, so far as they are known, show that he was lawfully engaged. It is possible, of course, that he rode up the slope on the truck in violation of law and was thrown off, but there is no more reason under the evidence to conclude that he had ceased to obey the law and begun to disobey it, than there was to conclude that Floyd's admittedly unlawful conduct had been superseded by what was lawful. The evidential presumption is in favor of Price and was against Floyd. See also Berlin v. Crawford, 86 Pa. Superior Ct. 283, 286; Callihan v. Montgomery, 272 Pa. 56, 64; Malky v. Kiskiminetas Valley Coal Co., 278 Pa. 552, 555.

The judgment affirmed.