Nych, Appellant, *v.* Pressed Steel Car Co. et al.

Argued April 29, 1931.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and DREW, JJ.

R. J. Lucksha, for appellant.

W. Clyde Grubbs, for appellees.

OPINION BY CUNNINGHAM, J., July 8, 1931:

This appeal is by the non-resident, dependent widow of Andy Nych from an order of the court below dismissing her exceptions to a decision of the Workmen's Compensation Board affirming the referee's disallowance of compensation for the death of her husband on December 25, 1928. Compensation was claimed in her behalf upon the theory that her husband died as the result of an accident which occurred in the course of his admitted employment with the Pressed Steel Car Company, one of the appellees. The case turned largely upon the testimony of medical experts: they all agreed that Andy Nych died of pneumonia; the controversy was over its cause. Claimant asserted it was caused by an accidental injury received in the course of his employment and there was testimony that during the late afternoon of October 29, 1928, he reported to his employer's representative he had hurt his back while handling a casting; the employer contended that whatever injury he may have then received had nothing to do with his death. The referee, after several hearings, disallowed compensation and the board affirmed his findings of fact and conclusions of

law; the action of the court below was, in effect, the entering of a judgment in favor of the employer.

Our inquiry, therefore, is whether there was evidence competent in law to support the findings of the compensation authorities and, if so, whether the law has been properly applied thereto: Puza v. P. & R. C. & I. Co., 98 Pa. Superior Ct. 139, 142, and cases there cited.

There was evidence, practically undisputed, that for about six years Nych had been employed under the superintendence of Chillcott, a foreman of the employer. On October 29, 1928, he was engaged in grinding castings varying in weight from fifty to a thousand pounds; they were brought to his place of employment by an overhead crane and piled up near the grinders and then by means of an electric hoist, operated by Nych, placed upon a grinder. Sometimes it was necessary to turn them on the floor of the shop; the particular casting upon which decedent was working at the time of the alleged injury weighed two hundred pounds. When he came to Chillcott he was holding the lower part of his back and said he had "hurt his side or back." In accordance with the prevailing practice, a report was filled out and the employe sent to the employer's emergency hospital. Dr. Wakefield, the physician employed by the company, testified decedent complained of soreness in the muscles of his back and of a cough; that he made a thorough examination but found no marks of an injury and that his diagnosis then was "occupational muscle soreness of the back and bronchitis." Between October 29th and November 22nd decedent walked almost daily from his home to the emergency hospital where Dr. Wakefield baked and strapped his back. On the latter date the doctor told him he was able to go to work, but decedent did not resume his employment and on December 6th Dr. Wakefield, when called to see him at his home, found him in bed and complaining "of pains all over his head,

chest and back and limbs.'' An analysis of urine disclosed ''pus cells and a trace of albumen;'' he ''was acutely ill, delirious,'' and was sent to a Pittsburgh hospital December 15th under a diagnosis of pneumonia. Dr. Berg, of the hospital staff, testified Nych was then developing a ''terminal pneumonia'' caused by ''kidney infection,'' which had been aggravated by his intemperate habits. Referring to the cause of his death, which occurred ten days later, Dr. Berg said, ''This man's death was the direct result of a lung infection, secondary to a kidney infection.'' A post mortem disclosed an ununited fracture of two ribs and an incomplete fracture and softening of the fifth dorsal vertebra. As to these fractures, Dr. Berg testified: ''We found two ribs had been fractured and from the appearance of those ribs my opinion is that the fracture had not existed longer than one month. The soft condition which was found in the vertebra was a beginning of a sarcoma of the 5th dorsal vertebra. There is no way I can line up the beginning of this sarcoma with the history of an accident such as I have heard here today and from the history I have received from this man's friends and whoever came to visit him.''

The controlling finding of fact of the referee reads: ''We think the testimony warrants a further finding that the deceased died of pneumonia but we are unable to find from the testimony that there was any causal connection between the pneumonia and the other pathological conditions found and the alleged accident of October 29, 1928.'' His conclusion of law was that the claim must be disallowed because claimant ''failed to establish by competent and convincing proof any causal connection between the death of the deceased ......and the alleged accident.'' The hospital records were admitted, without objection, at one of the earlier hearings, and as they contain a notation in the history of the case that the patient ''was struck on back

by casting being carried along by an overhead crane,"
it is urged on behalf of claimant that there was evidence that decedent received an injury, which would account for the broken ribs and the condition of the spine. The foreman, familiar with the work performed by decedent, testified that the only way in which he could have been struck by a casting would have been through the disarrangement of some part of the machinery and that nothing of that nature occurred. Dr. Wakefield expressed the positive opinion that decedent's ribs were not fractured prior to November 22nd and stated that up to that time he had not complained of any pain in the region of the ribs or vertebra, shown by the post mortem to have been fractured. He added: "If that man had any broken ribs at the time I saw him I certainly would be able to tell it, or any recent injury that would cause broken ribs or broken vertebra. The man couldn't come to the hospital with broken vertebra and broken ribs. He would have to be carried up." Further testimony of this witness was to the effect that he had treated decedent for muscular soreness of the back upon a previous occasion and that so far as any strain or bronchitis was concerned he could have returned to work on November 22nd; but he could not say he did not have broken ribs or an injured back when he sent him to the hospital on December 15th. No details of decedent's experiences between November 22nd and December 15th appear in the testimony; members of his family merely stated that he continued to complain of his back, was unable to work and during the latter part of that period was confined to bed.

Claimant, on the other hand, called Dr. Landon who had never seen decedent but, after a study of the hospital records, expressed, in answer to hypothetical questions, the opinion "that the immediate cause of this man's death was pneumonia; that this pneumonia

was in the nature of a terminal infection and that the primary cause of his death was the conditions found in his spine and in his ribs,'' and stated that it was his professional opinion that death ''was caused by the injury to his ribs and spine.'' Dr. Landon said he assumed decedent had been struck in the region of the fractured ribs and vertebra and based this assumption upon the history found in the hospital records. The testimony indicates that this history was not given by the decedent, as he was delirious when admitted, but by some of his friends. There was confusion and uncertainty in the evidence relative to the declarations of decedent as to what injury he received in the plant. The nurse in charge of the emergency hospital said he told her he ''strained his back'' moving the casting from the grinding machine to the pile at the side. On this point Dr. Wakefield testified decedent never told him he had been struck with a casting but that ''his occupation required him to turn castings over on the floor of the foundry. These castings were heavy and they caused his back to become sore. He had to stoop over and turn the castings over and the turning of the castings caused pain in the back.'' Dr. Berg's opinion was that the fractured ribs had ''absolutely no connection'' with the patient's death and that the condition of the vertebra was due to ''beginning sarcoma'' and had not resulted from trauma. On cross examination he said, ''Trauma has nothing to do with this case, ......the man had enough pus in the kidneys to kill ten.''

From these references to the testimony, it is apparent that there was ample legally competent evidence to sustain the findings of fact of the compensation authorities. Under such circumstances, these findings were binding upon the court below and we also must accept them as decisive of the case; under them, the

only possible conclusion of law is that claimant did not meet the burden imposed upon her by our Workmen's Compensation Act and is not entitled to compensation.

Judgment affirmed.