## Robertson et al. *v.* Rieder & Sons et al., Appellants.

Argued March 14, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Thomas Raeburn White,* and with him *Wayland H. Elsbree,* for appellant.

*George V. Strong,* for appellees.

Opinion by James, J., October 3, 1934:

On June 1, 1931, Alma L. Robertson, for herself and minor son, filed a claim petition averring that her husband, James W. Robertson, met his death on May 18th as a result of serious burns suffered on May 17, 1931 in an explosion of alcohol, shellac and paint in the cellar of his employer's premises. Defendants filed an answer alleging that decedent was not engaged in the course of his employment or engaged in defendants' business at the time of the accident. The case was referred to a referee who, after hearing, made an award in favor of the claimant based on his finding that "In the absence of sufficient testimony to show that the decedent had taken himself out of the course of his employment at the time of the accident, ...... decedent was in the course of his employment with the defendant." An appeal was taken to the Workmen's Compensation Board, which body remitted the record for further hearing, after which the referee who had succeeded the previous referee, on August 10, 1932 handed down a decision disallowing compensation based on his finding that decedent at the time of the accident had taken himself out of the course of his employment. Claimant appealed to the compensation board which affirmed the referee's finding of fact and dismissed the appeal. On appeal to the Court of Common Pleas No. 2 of Philadelphia County the action of the board was reversed and the record remitted for further hearing and determination

not inconsistent with the opinion of that court. In its opinion the court held that the defendant had failed to prove that at the time of the accident decedent was violating the orders of his employer and thereby took himself out of the course of his employment. The Workmen's Compensation Board thereupon remitted the record to the referee for further hearing and determination. The referee made an award in behalf of the widow and minor son, which award was subsequently affirmed by the Workmen's Compensation Board and the court of common pleas.

As the findings and award subsequent to the reversal by the lower court of the disallowance of compensation were dependent on the order of the court which had decided that the evidence in the case was not sufficient to sustain a finding that at the time of the accident the employee had taken himself out of the course of his employment by reason of a flagrant violation of his employer's orders, our action here is in the nature of a review of that decision, to determine whether there was competent evidence to support the findings of the referee, affirmed by the board, disallowing compensation.

We have repeatedly held that on appeal the courts may examine the proofs to see whether legally competent evidence is present to support the finding on which the award rests. The act does not mean that the evidence may be weighed as to its probative force and effect and the findings changed by the court to its own belief in that respect. It is the duty of the compensation authorities to decide all questions of fact and the courts to decide those of law: Vorbnoff v. Mesta Machine Co., 286 Pa. 199, 133 A. 256; and what the facts are the compensation authorities, whose duty it is to find the facts, may find either from direct proof, circumstantial evidence, or by inference from other facts: Haddock v. Edgewater Steel Co., 263

Pa. 120, 106 A. 196, and Flucker v. Carnegie Steel Co., 263 Pa. 113, 106 A. 192. And as the vital point in this case,—death in the course of employment—was not established by direct, as distinguished from circumstantial evidence, we must examine the record to see whether it contains evidence to support the conclusion of the referee and the board that at the time of the accident the decedent was not in the course of his employment and if we find such evidence, we must accept the facts found, even though we might have found a different conclusion if the duty of finding had been ours: Price v. Glen Alden Coal Co., 100 Pa. Superior Ct. 260, 263, 264.

The finding of the referee which was affirmed by the board and set aside by the court of common pleas was as follows:

"That James W. Robertson, the decedent in this case, was in the employ of the defendant as an engineer, and on every other Saturday afternoon and Sunday he served as a watchman.

"That on Sunday, May 17, 1931, the said James W. Robertson relieved the night watchman and reported for duty at about twenty minutes to seven.

"That on Sunday, May 17, 1931, there was an explosion of shellac which was kept in a fire-proof vault or room, together with varnish and other inflammable material, and the decedent was burned to such an extent that he died the next day, May 18, 1931. The accident happened shortly after the decedent had reported for work.

"That the said vault in which the explosion occurred was kept under lock and key on account of previous pilfering of materials kept therein.

"That the employer had given specific instructions to the decedent that he was not to go into that vault. There was one key for the door of said vault kept in the office and another key kept by a foreman, but the

foreman was not on duty that day. The door of the vault was not forced and must have been opened with a key secured by the decedent.

"The inference to be drawn from the testimony is that the decedent evidently had gone to the office, secured the key and opened the vault and then returned the key to the office before he entered the vault, and that he entered the vault carrying a lighted candle and a can, as there was candle grease and a small candle and can found in the vault, and this lighted candle evidently caused the explosion.

"That the duties to be performed by the decedent on May 17, 1931, were such that would not require him to enter this vault for anything incident to his duties that were to be performed by him on this day.

"That the decedent had violated the specific instruction of his employer when he entered the vault, and the only tentative inference from the testimony is that the decedent was in the act of pilfering shellac at the time of said accident, and had, therefore, taken himself out of the course of his employment."

Whether the referee was warranted in his finding of fact must be determined by whether the record contains testimony sustaining his finding.

Charles Rieder, one of the defendant partners, engaged in the general manufacture of woodwork, testified that the shellac was required on the premises; that it was kept in a locked vault in the basement to which only the foreman of the finishing department and himself had access by keys; that the deceased was an engineer at the plant but on Sundays was required to work as a watchman; that he first learned of the accident about 7:30 on the morning of May 17th and arrived at the premises about eight o'clock, at which time he found the policeman and fireman there; that the vault was flooded with water which was slowly draining off and that the front part of a shellac barrel

had burst open and the skid on which it stood was charred; that he made an examination of the entrance to the vault and found that the door had been opened with a key; that he went upstairs to look for his key and the key was in the drawer; that when he arrived at the office a policeman had a can of shellac that was setting on his desk; that on the day in question the engines in the plant were not running; that the boiler of the plant was about 100 to 125 feet from the entrance to the vault and that on the morning of the explosion the fire was practically out in the boiler; that none of the duties of the deceased required him to go into the vault, his only relation thereto being his passing the vault on his usual rounds; that the vault had been locked on Saturday when the day's work was concluded; that deceased had been instructed by him not to go into the vault; that in investigating the cause of the accident he discovered that the barrel containing the shellac had drops of grease from a candle on the top of the barrel; that an explosion had taken place in the vault was established by the fact that the head of the barrel was blown out and the front of the skid was all burned and that the fire had been put out by the sprinkler system; that the premises were 196 feet deep and about 170 feet wide and the key was in the drawer of a desk in his private office on the second floor which was not locked, and decedent had access to the office; that an explanation of why the vault was kept locked was that there had been so much stealing he had to adopt that rule.

Mr. Frank Joyner, night watchman who was relieved by the deceased, testified that he had worked from 5:30 on the afternoon before until about a quarter to twenty minutes to seven on the day of the explosion; that on the night of May 16th and the morning of May 17th he had occasion to go past the vault where the shellac was kept every hour and noticed

that the door was closed and locked; that on the morning of the 17th the witness met the deceased at the office door entrance to the plant, which is about ten or fifteen feet from the office door in which Mr. Rieder's desk was located which contained the key; that it would take about two minutes to walk from the front of the plant to the shellac vault.

Mr. Peter F. Cosman, a patrolman, testified that he had been aroused at his home and he went to the mill and looked through the glass door and saw wet foot prints; that he raised a window and climbed into the office and as he went out of the office door he saw a man lying on a bench, burned all over his body and covered with shellac; that he asked the man what happened to him to which he replied, ''Get me to the hospital please'' and would not tell the witness how it happened; that after they took the man to the hospital he went down and looked around the cellar and discovered the door of the vault open about four inches; that the lock was not broken; that he looked in and noticed the sprinklers were running in the vault; that the head of the barrel had been blown out and he saw a gallon can containing a pint or quart floating in the water; that he also saw a small candle but saw nothing indicating a fire.

Mr. John VanMeter, a police officer who accompanied Cosman, testified largely as did Cosman.

Injuries resulting from those acts which are in direct hostility to and in defiance of positive orders of the employer concerning instrumentalities, places or things about or on which the employe has no duty to perform, and with which his employment does not connect him, are not compensable (Dickey v. Pitsb. L. & E. Co., 297 Pa. 172, 175, 146 A. 543) and our discussion shall be limited to determine whether the testimony warranted the referee and the board in finding

that decedent met his death while violating the positive orders of his employer when he entered the vault.

The court below, on the first appeal from the board, in its opinion reversing the board on its findings of fact, stressed the fact that decedent was found two hundred feet from the door of the vault; that there was no proof that it was he who had opened the door of the vault nor that he had placed a candle therein, nor that it was he, if anybody, who was engaged in pilfering and that it was just as likely that it was somebody else other than claimant who obtained the key to the vault and entered it, and that decedent discovering this went to the vault to perform his duty.

If the decedent had not opened the vault and used the candle therein, who was it that did those things? And if the decedent was not engaged in the pilfering, we have no testimony whatsoever connecting any other person or showing that any other person was on the premises. The testimony showed that on the morning in question when the night watchman left the premises, the vault was locked with no evidence of a fire and yet within a short time, not more than half an hour, we find that an explosion had taken place and when the officers entered the premises through a window, we find the decedent seriously burned, covered with shellac and lying some two hundred feet away from the door of the vault, near the office in which the key to the vault was kept and wet footprints to the door leading into the office. When inquiry was made of decedent as to what happened he would not tell. There was absolutely no testimony showing that another person was on the premises and that decedent suffered the injuries in protecting the interest of his employer. The testimony showed that at the time the electric current was turned off and the explosion could only have occurred from the use of a candle that was found in the vault.

Even assuming that there was a fire in the boilers, there was no testimony whatever to connect it with the explosion in the vault or that it could have any relation to the explosion. Appellee has stressed several possibilities as the cause of the accident, none of which are based upon testimony, and none as probable as the conclusion reached by the referee.

The burden of proving that decedent met his death as a result of a violation of orders in entering the forbidden part of the premises was upon the defendant but the measure of proof required is not that of absolute proof but merely such proof as the reasonable inferences therefrom would warrant the conclusion that the accident resulted from a violation of the orders. If the decedent, in spite of the orders, had been required to enter the forbidden vault in the performance of some duty, he would still be in the course of his employment but we find nothing to establish any such duty other than mere conjecture.

The conclusion reached by the referee was fully warranted by the testimony and as was said by Judge KELLER, in Floyd v. Paulton Coal Mining Co., 94 Pa. Superior Ct. 1, 7, "Any other finding, under the evidence now in the case, would have to rest on the conjecture that some combination of circumstances, of which there is no evidence present of their combining, happened or occurred to cause the explosion in place of the obvious explanation ready at hand."

Appellee has earnestly urged that the cases of Laraio v. P. R. R. Co., 277 Pa. 382, 121 A. 325; Price v. Glen Alden Coal Co., 100 Pa. Superior Ct. 260, and Barkanich v. Jeddo-Highland Coal Co., 105 Pa. Superior Ct. 145, 160 A. 137, are controlling.

In each of these cases the referee and the board found that the decedent was in the course of his employment so that the question presented on appeal was

entirely different from the question presented in the present appeal.

The judgment of the lower court is reversed and the record is ordered to be remitted to the court below with directions to enter judgment in favor of the defendants.