## Clugh, Appellant, v. National Fireproofing Company.

Argued December 11, 1942.

Before BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

John McCrea, with him Chauncey Depuy, Jr., and Harry Devine, for appellant.

J. Paul Erwin, with him W. Glenn George, for appellee.

OPINION BY STADTFELD, J., March 1, 1943:

The Workmen's Compensation Board having found that the death of the decedent was not caused by an accidental injury in the course of his employment, the question presented for consideration on appeal is whether or not this finding is supported by sufficient legally competent evidence.

In the case of Robertson v. Rieder & Sons, 114 Pa. Superior Ct. 518, 521, 174 A. 604, we said, in an opinion by Judge JAMES: "We have repeatedly held that on appeal the courts may examine the proofs to see whether legally competent evidence is present to support the finding on which the award rests. The act does not mean that the evidence may be weighed as to its probative force and effect and the findings changed by the court to its own belief in that respect. It is the duty of the compensation authorities to decide all questions of fact and the courts to decide those of law: Vorbnoff v. Mesta Machine Co., 286 Pa. 199, 133 A. 256; and what the facts are the compensation authorities, whose duty it is to find the facts, may find either from direct proof, circumstantial evidence, or by inference from other facts."

In Harmon v. Knoll, 129 Pa. Superior Ct. 390, 195 A. 448, the duty and power of the court in cases of this character is thus stated: "It is not within the scope of this court's duty, therefore, to pass on the facts in the case, but rather to ascertain whether the findings of fact as made by the referee and sustained by the board are based on legally competent evidence."

The record shows the following facts: The decedent was 40 years old. He had engaged in hard labor all his life. He had performed pick and shovel work, road-gang work, tending bricklayers, pushing wheel barrows full of bricks, helping to move scaffolds and helping roll 200 and 300 pound stones on to dollies and other work of a similar nature.

On July 22, 1938, which was a hot day, he was engaged in performing the duties of a brickmason's tender on the top floor of an unfinished three story cottage. As a brickmason's tender he performed the following kind of work: He would take 5 or 6 bricks weighing from 25 to 30 pounds from about the center of the floor on which he was working to the walls of the building, about 15 or 16 feet away, where the bricklayers were working; on other occasions he would carry a tile or two weighing about 8 to 10 pounds each; on other occasions he would carry a bucket of mortar weighing from about 40 to 50 pounds to bricklayers, the bucket of mortar having been handed up to him through a hole in the floor by other workers who were standing on a platform which was 5 feet below the level of the floor on which the decedent was working, so that the decedent picked up the bucket of mortar from about the level of the floor on which he was working. The work above described was regular brickmason tender's work which the decedent had performed in the past.

On the day in question the decedent finished eating his lunch about 12:30 P.M. After lunch he returned to his work as a brickmason's tender and continued to perform his regular duties. Shortly after lunch he complained to a fellow worker, Bruce Gontz, of having "a little pain in the stomach." A short time after that, the decedent walked downstairs to attend to nature. He was gone a short time and then returned. At about 1:30 or 1:45 P.M. he again complained of pain in his stomach and went down into the cellar of the cottage where he lay down on a board. Some time thereafter

fellow employees went down to see how he was and, as he appeared to be ill, a physician was called. The physician, Dr. Samuel D. Shull, Chambersburg, arrived around 3 P.M. However, decedent had died shortly prior thereto.

An autopsy was performed by Dr. A. W. Thrush, Coroner for Franklin County, and by Dr. Shull. At the autopsy it was noted that there was an atheroma or degenerative change of the vessels of the heart and the large vessels that lead from the heart which particularly affected the aorta. Dr. Thrush stated that the condition found would have been "almost a normal condition" for a man aged 65 who was suffering from heart disease. Dr. Shull also testified that upon examination the vessels of the heart were "sclerotic, or atheromatous, or hardening, as it were" and that the condition had advanced to a point where it would have been almost normal in a man of 65 who was suffering from heart disease. In addition the doctors found that there were 4 ounces of bloody serum in the pericardium or the sac that covers the heart. The lungs were filled with a serum or fluid. This condition was described as edema of the lungs. In addition there was a small slit or tear in the left auricle. Without pressure on the part, this slit was "a line, but when pressed out from the inside, it assumed a circular form" about ¼ of an inch in diameter.

Quoting from the opinion of the board: "Analyzing the evidence contained in this record, we find that claimant performed his usual work in the usual manner on July 22, 1938; that he had been performing the same kind of manual labor for the defendant for many years prior to the date of the alleged accident; that this was the usual manner of performing the kind of work deceased was required to do; that there was no unusual exertion or physicial strain necessary to perform his work; that there was no out-cry of stress or strain by decedent shortly prior to his death.

"We find that neither the lay or medical testimony shows a causal connection between decedent's work and the heart condition which caused his death. In order to prove that claimant had a right to compensation, she had to establish that the labor which decedent was performing on July 22, 1938 caused an accident by some strain, over-exertion or trauma, which brought about decedent's heart condition, and ultimately caused his death."

The court below cited, inter alia, the case of *McFadden v. Lehigh Navigation Coal Co.*, 111 Pa. Superior Ct. 501, 170 A. 314. We quote from the opinion by Judge (now Justice) PARKER, as follows: "There was not any evidence that the decedent on the day of his death did anything else than his usual work and that to which he had been accustomed for a long period of time. Neither is there any evidence from which it may be inferred that he slipped, fell, or had any other mishap ...... Arguing on principle, our first conclusion is that hard labor, when labor of the same kind and intensity has been regularly and usually performed by the employee, is not of itself an accident. If the law is as contended by appellee, a hod carrier called upon to carry a heavy load up a succession of ladders, or a woodsman felling trees, or a blacksmith or his helper hammering iron, although he has done the same work for years, if stricken with a heart strain or apoplexy while so engaged and dies, would be entitled to compensation. This would lose sight entirely of the fact that there must be an accident as the basis of compensation. The hod carrier, woodsman, or blacksmith would be doing precisely the same kind of labor he had performed for a lifetime. Surely no one could contend that the performance of this labor would constitute an unexpected or fortuitous, untoward, or unusual event." See also *Good, Appellant, v. Pennsylvania Department of Property and Supplies et al.*, 346 Pa. 151, 28 A. 25.

After a careful examination of the record we are satisfied that the court below arrived at a correct conclusion.

Judgment affirmed.